**Pearline E. FREEMAN, et al.**

v.

**B & B ASSOCIATES, et al., Appellants.**

No. 85–5239.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 7, 1986.
Decided May 9, 1986.

William Daniel Sullivan, Washington, D.C., for appellants.

John Cary Sims, with whom Alan B. Morrison and David E. Fox, Washington, D.C., were on the brief, for appellees.

Before WRIGHT, WALD and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

This case arises out of a petition for an award of attorneys' fees under the Truth-in-Lending Act, 15 U.S.C. §§ 1601–1667e. Pearline and Bailey Freeman brought suit under the Truth-in-Lending Act (TILA) and other statutes seeking damages and rescission of a loan made to them by B & B Associates. They also sought attorneys' fees under section 1640 of TILA, which permits a court to award attorneys' fees whenever a borrower has a right of rescission under TILA. The Freemans' suit was resolved when the Freemans accepted an offer of judgment by B & B Associates which granted rescission but specifically excluded all liability for attorneys' fees. B & B Associates now appeals from the District Court's holding that its offer of judgment did not preclude the Freemans' attorney, David Fox, from recovering under an independent cause of action for attorneys' fees under TILA. Because we conclude that TILA creates no such independent cause of action in an attorney, we now reverse the District Court.

## I. Background

In February of 1981, Pearline and Bailey Freeman obtained a loan at a stated interest rate of 22% from B & B Associates, a partnership consisting of W. Lawrence Brantley and Beatrice E. Brantley. The Freemans executed a promissory note payable to B & B Associates and secured this note by a second mortgage on their home. Although the loan purported to be for $16,000.00, the Freemans in fact received only $8,465.57 from B & B Associates. The face amount of the loan was reduced by (1) a $3,500.00 discount fee; (2) a $3,520.00 finders' fee; and (3) closing costs of $514.43. Moreover, under the terms of the agreement, the Freemans would pay back $29,596.00 on this $8,465.57 loan, making the loan's effective interest rate 62% per annum rather than the announced rate of 22%.

By May of 1983, the Freemans had repayed $8,105.00 to B & B Associates. After seeking legal advice, the Freemans in June of 1983 sent B & B Associates a "Notice of Intent to Rescind" under the Truth-in-Lending Act, 15 U.S.C. § 1635. B & B Associates thereupon declared the Freemans' note to be in default and demanded immediate payment of the remaining principal and interest. The Freemans brought suit in District Court to prevent foreclosure on the deed of trust and the sale of their home.

The Freemans' complaint set forth nine claims for relief. Important for purposes of this appeal are Counts I and II of their complaint, which sought relief under TILA. Specifically, the Freemans sought rescission under 15 U.S.C. § 1635 on the ground that B & B Associates had failed to make certain statutorily mandated disclosures. They also sought penalties, attorneys' fees and costs for this failure to disclose under 15 U.S.C. § 1640.

One year after the Freemans filed suit, and three months prior to trial, B & B Associates made an offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure. This offer allowed judgment to be taken against B & B Associates for rescission of the note and deed of trust. The offer also provided for restitution to B & B Associates of the difference between

their original loan of $8,465.57 and the $8,105.00 which the Freemans had to date repaid. The offer of judgment included an offer to pay costs incurred, as all offers of judgment must under Rule 68, but provided that the offer "specifically excludes all liability for attorneys' fees as well as all other claims made in the Amended Complaint herein."

The Freemans accepted the offer of judgment through their counsel, Fox. On the same day, the Freemans applied to the District Court for an award of attorneys' fees under TILA. After permitting Fox to intervene as a party plaintiff for purposes of the attorneys' fees claim, the District Court held that although the Freemans had waived *their* claim for attorneys' fees, Fox had a claim against B & B Associates for fees independent of the claim of the Freemans and unaffected by the Freemans' acceptance of the offer of judgment. The District Court strictly construed the offer of judgment against its drafter and found that the offer did not explicitly bar the attorney's independent claim. The District Court also noted that because Fox's fee agreement with the Freemans was cast in terms of a cash recovery, Fox's recovery of attorneys' fees from B & B Associates did not create a windfall for the Freemans.[1] The District Court then awarded $31,860.00 in attorneys' fees under TILA.

## II. AN ATTORNEY'S INDEPENDENT RIGHT UNDER TILA

### A. *The Statutory Scheme*

■ The Truth-in-Lending Act imposes mandatory disclosure requirements on creditors who extend consumer credit to borrower's. The purpose of the Act is to promote the informed use of credit by ensuring "a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit...." 15 U.S.C. § 1601(a). As the Supreme Court has explained, "The Truth in Lending Act reflects a transition in congressional policy from a philosophy of 'Let the buyer beware' to one of 'Let the seller disclose.'" *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 377, 93 S.Ct. 1652, 1664, 36 L.Ed.2d 318 (1973). Pursuant to this goal, section 1635 of the Truth-in-Lending Act provides a right of recission to a borrower who enters a consumer credit transaction in which the creditor acquires a security interest in the borrower's residence. The borrower may exercise this right to rescind within three business days of either (1) the consummation of the transaction or (2) "the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later...." 15 U.S.C. § 1635(a). Section 1635 also provides that "[i]n any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640...." 15 U.S.C. § 1635(g). Section 1640 in turn provides that:

> any creditor who fails to comply with any requirement imposed under this part ... with respect to any person is liable to such person in an amount equal to the sum of—

> .  .  .  .  .

[1] The fee agreement in fact provided that the Freemans "agree to pay David E. Fox and associates for his services a total professional fee of one-third of any amounts recovered, whether by way of compromise or litigation and from any source." *See* Record Excerpts at Tab F. The District Court concluded that this agreement was cast in terms of a cash recovery. *See Freeman v. B & B Associates*, 595 F.Supp. 1338, 1342 (D.D.C.1984); *see also* Memorandum on Defendants' Motion for Reconsideration at 10. We are puzzled by the District Court's conclusion. The phrase "amounts recovered" is not obviously synonymous with "cash recovery," and the interpretation of any ambiguity in the phrase "amounts recovered" must turn on the intent of the parties to the contract. The District Court had no such evidence of intent before it when it rendered its interpretation of the fee agreement. As the interpretation of that agreement does not affect our determination on appeal, we leave this question for Fox and the Freemans in the first instance.

(3) in the case of any action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1640(a). The statutory scheme of TILA thus enables a borrower to recover attorneys' fees if he has a right to rescind under 15 U.S.C. § 1635(a).

### B. *TILA's Remedial Purpose*

The District Court concluded that the rescission effectuated by B & B Associates' accepted offer of judgment amounted to a determination that the Freemans had a right of rescission under section 1635 and therefore would have entitled them to attorneys' fees under section 1640, had they not waived such fees by accepting the offer of judgment. The District Court went on to find that the Freemans' attorney could nonetheless maintain a separate claim for fees independent of the underlying claim of his clients. Assuming, *arguendo*, that the accepted offer of judgment can be considered a determination of a right of rescission under section 1635 sufficient to permit a court to award attorneys' fees, we nonetheless find that an attorney has no claim for fees separate and independent of the right of his client.

The District Court did not base its finding of an attorney's independent right of action on the explicit language of the statute but rather looked to the general objectives of TILA. According to the District Court, a refusal to find a separate attorney cause of action for fees would frustrate a "critical objective of the Truth-in-Lending Act, i.e., to assure the services of attorneys for persons pursuing claims under the Act." Memorandum on Defendants' Motion for Reconsideration at 8. The District Court's analysis borrowed heavily from the reasoning in *James v. Home Construction Company,* 689 F.2d 1357 (11th Cir.1982). In *James* the Eleventh Circuit found that a successful attorney in a TILA case had standing to seek fees after the settlement of the borrower's underlying claim. The

settlement agreement, however, expressly left open the existence of the lawyer's fees. The Eleventh Circuit found that under these circumstances section 1640(a)(3) created a "right of action" for attorneys to seek fee awards, reasoning that

If settlement of a TILA case precluded the plaintiff's attorney from seeking a fee award, nothing would prevent indigent clients, who have no financial interest in statutory fee awards, from freely bargaining them away without personal detriment. Such a result would enable creditors who have violated the Act to escape liability for attorney's fees; such a practice would thwart both the statute's private enforcement scheme and its remedial objectives.... Congress could not have intended such a result.

*James,* 689 F.2d at 1359.

While we are sensitive to the concerns underlying the District Court's opinion and the Eleventh Circuit's holding in *James,* we do not think they support the creation of an attorney's independent right of action under TILA for fees. The District Court is correct that a major congressional goal behind TILA was the creation of a system of private enforcement. *See Gram v. Bank of Louisiana,* 691 F.2d 728, 729 (5th Cir. 1982). The court's analysis, however, ignores the fact that Congress specified how this remedial purpose was to be effectuated. The words of the statute show that Congress chose to create its system of private enforcement by giving borrowers access to a source of funds with which to compensate an attorney.

The words of section 1640 unambiguously vest the right to recover attorneys' fees in the client rather than in the attorney. Section 1640 states that "any creditor who fails to comply with any [disclosure] requirement ... with respect to *any person* is liable to *such person* in an amount equal to ... the costs of the action, together with a reasonable attorneys' fee as determined by the court." 15 U.S.C. § 1640(a) (emphasis supplied). In other words, under the statute the creditor is liable for attorneys' fees to the person to whom the creditor

failed to make the required TILA disclosures, *i.e.,* to the *borrower.* We find nothing in the words of the statute suggesting any right to fees in an attorney which is independent and separate from the right of the borrower-client to collect attorneys' fees. *See also Smith v. South Side Loan Company,* 567 F.2d 306, 307 (5th Cir.1978) (award of attorneys' fees is right of party suing, not his attorney); *cf. Evans v. Jeff D.,* — U.S. —, — & n. 19, 106 S.Ct. 1531, 1539 & n. 19, 89 L.Ed.2d 747 (1986) (Congress bestowed statutory eligibility for attorneys' fees under 42 U.S.C. § 1988 on party, not attorney).

■ Because we find that section 1640 clearly places the right of action for attorneys' fees in the borrower, we will not ignore the words of the statute in pursuit of some disembodied congressional purpose. While the language of TILA "should be construed liberally in light of its broadly remedial purpose," *see Gram v. Bank of Louisiana,* 691 F.2d at 729 (quoting *Thomas v. Myers-Dickson Furniture Company,* 479 F.2d 740, 748 (5th Cir.1973)), this does not mean that a court may interpret TILA to encompass any policy that increases the total number of TILA suits brought. A court looks to legislative purposes for guidance where the words of a statute permit alternate constructions or where an actual conflict between statutory provisions exist. In interpreting ambiguous provisions of TILA we agree that a court should strive to effectuate the congressional goal of encouraging private litigants to assert their rights under the statute. We do not, however, find in the words of section 1640(a)(3) any indication that an attorney possesses a cause of action for attorneys' fees independent of his client's cause of action.

We also regard the District Court's reliance on *James v. Home Construction Company* as misplaced. *James* involved an attorney's standing to pursue his client's claim for attorneys' fees under TILA. *James* is silent on the question of an attorney's right of action where the client has expressly waived any claim to attorneys' fees. To the extent that language in *James* suggests a more general right of action under TILA by attorneys for their fees, we must disagree for the reasons already stated above. *See also Evans v. Jeff D.,* — U.S. at — n. 19, 106 S.Ct. at 1539 n. 19 (suggesting disapproval of this aspect of *James* ). In fact, however, we read the rationale in *James* as applicable solely to the issue of the attorney's standing to seek attorneys' fees. *See Moore v. National Association of Securities Dealers, Inc.,* 762 F.2d 1093, 1099 n. 10 (D.C.Cir.1985) (opinion of MacKinnon, J.) (attorney's right to fees under Title VII is one of subrogation to his client's). *But cf. Smith v. South Side Loan Company,* 567 F.2d at 307–08 (suggesting TILA attorney may never have standing). This more limited reading of *James* accords with cases in which an attorney has been found in some circumstances to have standing to pursue *his client's* claim for attorneys' fees in civil rights cases. *See, e.g., Lipscomb v. Wise,* 643 F.2d 319 (5th Cir.1981) (although award of attorneys' fees is made to prevailing party, attorney is the only person aggrieved if fees are denied). In *Lipscomb,* the Fifth Circuit held that to permit an attorney to appeal a denial of attorneys' fees to his client furthers the congressional purpose of encouraging private enforcement of the civil rights laws. *Lipscomb* did not deduce from this congressional purpose any right of an attorney for fees independent of the right of his client, however. Instead, the court found merely that the attorney had standing to advance his client's right to fees.

Finally, we do not think that our refusal to find an independent attorney cause of action for fees in any sense does violence to the congressional purpose behind section 1640(a)(3). We view the purpose of section 1640(a)(3) more narrowly than does the District Court. "Section 1640 is intended to allow aggrieved *consumers* to participate in policing the Act," *Gram v. Bank of Louisiana,* 691 F.2d at 729 (emphasis added); it is not intended to appoint attorneys themselves as private attorneys general. Congress sought to encourage injured borrowers to bring TILA suits by providing

them with funds to pay an attorney. This narrower view of the congressional purpose is consistent with existing cases holding that an attorney's fee award is not subject to setoff, and once awarded becomes in effect an asset of the attorney rather than the client. *See, e.g., Plant v. Blazer Financial Services, Inc.,* 598 F.2d 1357, 1366 (5th Cir.1979). These cases hold only that the congressional purpose behind section 1640(a)(3) would be frustrated if the funds awarded for payment of attorneys' fees were used for some other purpose; they do not suggest any independent right of an attorney for fees. *See also Evans v. Jeff D.,* — U.S at —, 106 S.Ct. at 1539 (party may assign his right to fees to his attorney).

### III. FAILURE TO CROSS-APPEAL THE VALIDITY OF THE WAIVER

Fox and the Freemans also attempt to argue on appeal that the Freemans' waiver of attorneys' fees through the accepted offer of judgment was invalid under an extension of *Moore v. National Association of Securities Dealers, Inc.,* 762 F.2d 1093 (D.C.Cir.1985). While acknowledging that in *Moore* this court upheld a waiver of attorneys' fees as part of a settlement agreement, appellees read *Moore* to suggest several factors which will as a matter of law invalidate a fee waiver in situations different from that involved in *Moore.* According to the appellees, under the circumstances of this case B & B Associates' offer of judgment could not condition virtually full relief on the merits upon a waiver

of statutorily provided attorneys' fees. B & B Associates' offer, they contend, pitted client against attorney and took undue advantage of an attorney's ethical duty to serve his client's interest. The waiver was therefore invalid since contrary to the public policies underlying the TILA fee provision.

▮ We find that the validity of the Freemans' waiver of attorneys' fees is not properly before the court because Fox and the Freemans failed to take a cross-appeal from the judgment of the District Court.[2] *See* Fed.R.App.P. 4(a)(3).[3] The general rule governing when an appellate court will consider a claim not raised by appeal is set forth in *United States v. American Railway Express Company,* 265 U.S. 425, 44 S.Ct. 560, 68 L.Ed. 1087 (1924):

> It is true that a party who does not appeal from a final decree of the trial court cannot be heard in opposition thereto when the case is brought here by the appeal of the adverse party. In other words, the appellee may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below. But it is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reason-

---

**2.** After oral argument in this case, the Supreme Court announced its decision in *Evans v. Jeff D.,* — U.S. —, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986). We find nothing in *Evans* to cast doubt on the continuing validity of our decision in *Moore.* Because we find that appellees have failed to file a proper cross-appeal, we need not decide today how *Evans v. Jeff D.* affects any extension of the *Moore* decision.

**3.** Fed.R.App.P. 4(a)(3) provides:
If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period last expires.

This supplement to the general requirement contained in Rules 3(a) and 4(a)(1) of the Federal Rules of Appellate Procedure that an aggrieved party must file a timely notice of appeal is intended to protect a party who is willing to live with a judgment primarily in his favor, so long as the judgment stands as is. Under Rule 4(a)(3), if a party opts to appeal one aspect of the District Court's judgment, all other parties have additional time in which to file a cross-appeal. A party can wait to appeal until another party challenges the District Court's judgment. Rule 4(a)(3) thus eliminates the necessity for most protective cross-appeals. See 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 204.11[1], at 4–40 (2d ed. 1985).

ing of the lower court or an insistence upon matter overlooked or ignored by it. *Id.* at 435, 44 S.Ct. at 564 (footnote omitted); *see also Massachusetts Mutual Life Insurance Company v. Ludwig*, 426 U.S. 479, 480–81, 96 S.Ct. 2158, 2159, 48 L.Ed.2d 784 (1976) (per curiam); *Dandridge v. Williams*, 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970); *Associated Third Class Mail Users v. United States Postal Service*, 662 F.2d 767, 770 & n. 29 (D.C.Cir.1980) (appellee may not enlarge a judgment to which he did not object); *Koniag, Inc. v. Andrus*, 580 F.2d 601, 605 n. 3 (D.C.Cir.), *cert. denied*, 439 U.S. 1052, 99 S.Ct. 733, 58 L.Ed.2d 712 (1978).

■ An appellate court, therefore, will freely consider any argument by an appellee that supports the judgment of the district court including arguments rejected by the district court and even arguments contradicting the logic of the district court. Only when an appellee attempts to overturn or modify a district court's judgment must the appellee file a cross-appeal. While a cross-appeal is not a jurisdictional requirement, it is the "proper procedure," *see Bryant v. Technical Research Company*, 654 F.2d 1337, 1341 (9th Cir.1981), and the failure to file a cross-appeal ordinarily precludes review where an appellee seeks to enlarge his rights or lessen those of an adversary. *See, e.g.*, 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3904, at 415 (1976). Courts will on occasion excuse the failure to file a cross-appeal, but only in cases involving exceptional circumstances.[4]

The issue for this court therefore is whether the argument appellees raise that their waiver of attorneys' fees was invalid is essentially an attempt to modify the relief granted by the District Court or merely asks us to affirm the District Court on other grounds. If Fox and the Freemans seek only to enforce the District Court's

decree, we may consider their argument. "But if a finding for appellees on this claim would necessarily enlarge the relief, we may not and should not consider it." *See Phillips v. Pennsylvania Higher Education Assistance Agency*, 657 F.2d 554, 567 (3d Cir.1981), *cert. denied*, 455 U.S. 924, 102 S.Ct. 1284, 71 L.Ed.2d 466 (1982).

In the instant case, a finding for Fox and the Freemans on their waiver argument *would* necessarily modify the judgment of the District Court. We cannot conclude that appellees attack only the reasoning of the District Court. If the Freemans' waiver of attorneys' fees is invalid because the offer of judgment was unduly coercive and contrary to the congressional policy underlying TILA, this court must vacate the entire offer of judgment.

■ Appellees argue that the proper relief for an impermissibly coercive offer of judgment is for the court to award attorneys' fees while keeping the rest of the offer of judgment intact. We find this contention fatally flawed. In a recent challenge to a settlement agreement which granted injunctive relief conditional on plaintiffs' waiver of any claim for attorneys' fees under 42 U.S.C. § 1988, the Supreme Court held that a district court could not enforce such a settlement on the merits and also award attorneys' fees. *See Evans v. Jeff D.*, —— U.S. ——, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986). According to the Supreme Court, Rule 23(e) of the Federal Rules of Civil Procedure does not permit a court to materially modify a proposed settlement and order its acceptance over either party's objection. *See also Moore v. National Association of Securities Dealers, Inc.*, 762 F.2d at 1110 n. 21 (opinion of MacKinnon, J.) (for a court to unilaterally modify a settlement which contemplated no payment of attorneys' fees would undermine the settlement process); *id.* at 1114 (Wald, J., concurring in the judgment) (court "should be reluctant to enforce the

---

**4.** *See Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 668 (5th Cir.1983) ("No such exceptional circumstances producing great inequity are here shown of the extra-ordinary nature that

on rare occasions has induced a reviewing court to afford relief to appellees who did not file a cross-appeal.").

defendant's promise while depriving it of the agreed consideration") (footnote omitted).

The concerns expressed in *Evans v. Jeff D.* regarding a court's inability to materially modify proposed settlements under Rule 23(e), which *obligates* a court to assess the reasonableness of any settlement in a class action, are even more compelling in the context of an offer of judgment. A court's discretion to reject a waiver of attorneys' fees in an offer of judgment, to the extent it exists at all, appears to be far more circumscribed than its discretion to determine reasonableness under Rule 23(e).[5] Under an offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure, a defendant *allows* judgment to be taken against him. *Cf. Marek v. Chesney,* —— U.S. ——, 105 S.Ct. 3012, 3015, 87 L.Ed.2d 1 (1985). The terms of the offer of judgment, if accepted by the plaintiff, are binding on the defendant because of the defendant's consent. Elimination of an express and integral term from an offer of judgment—such as the Freemans' waiver of attorney's fees—destroys the binding force of the offer on the defendant by vitiating the defendant's consent. The defendant submits to be bound by the offer of judgment as the defendant has formulated it. The express terms of this offer of judgment are material and thus not severable.[6] The District Court could not know that B & B Associates would have submitted to a different offer of judgment. And absent the defendant's consent, a court has no power to enforce the offer of judgment. *Cf. Evans v. Jeff D.,* —— U.S at

——, 106 S.Ct. at 1537 (court has no power under Fed.R.Civ.Pro. 23(e) to materially *modify a settlement and order its acceptance over either party's objection*).

If this court accepted appellees' argument that the Freemans' waiver was invalid, we would necessarily vacate rather than reform the offer of judgment. Because reversal of the District Court on the issue of the validity of the Freemans' waiver of attorneys' fees would substantially modify the original relief granted to the parties, Fox and the Freemans were obligated to file a cross-appeal. Although the District Court originally awarded attorneys' fees to Fox independently, the court did not alter in any way the original offer of judgment, which provided for rescission of the Freemans' loan agreement, the payment of costs by B & B Associates and the return of $360.57 to B & B Associates. The original offer of judgment also provided an explicit waiver of the *Freemans'* claim for attorneys' fees. To vacate the offer of judgment, therefore, would clearly modify the rights of B & B Associates under the original judgment of the District Court. In the absence of a cross-appeal we will not consider the validity of the Freemans' waiver of attorneys' fees which was involved in accepting the offer.

It might be argued that the instant case falls within that narrow class of cases in which a court should ignore the failure to take a proper cross-appeal *even though* this will result in a modification of the rights of B & B Associates under the judgment. We do not, however, find any exceptional circumstances in this case to justify

---

**5.** While opining that a district court ordinarily has no obligation to evaluate the reasonableness of a fee waiver outside the class action context, *see* —— U.S. at —— n. 30, 106 S.Ct. at 1543 n. 30, the Supreme Court in *Evans* explicitly reserved the question of whether a district court could (or must) refuse to approve a fee waiver outside the class action context in three specific situations. These situations included the existence of a "routine ... policy designed to frustrate the objectives of the Fees Act," a "vindictive effort to deter attorneys from representing plaintiffs in civil rights suits," and a "situation [that] presents a grossly unfair choice to the plaintiff and his/her counsel, and [where] permitting

such offers to be made would seriously undermine the purpose of fee shifting provisions." *See Evans,* —— U.S. at —— & n. 32, 106 S.Ct. at 1544 & n. 32.

**6.** No argument has been made that the Freemans' waiver of attorneys' fees was not clearly expressed and "material" to B & B Associates' offer of judgment. This court need not today resolve whether a court should apply traditional principles of contract law when faced with an *ambiguous* offer of judgment accepted by the plaintiffs or with changed circumstances arising after the offer has already been accepted.

such a departure from the general requirement of a cross-appeal. Although the Supreme Court did not decide *Evans v. Jeff D.*, — U.S —, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986), until after oral argument in this case, the Freemans should not have been uncertain about the proper route to take to preserve their judgment and yet obtain attorneys' fees if their lawyer's right to seek fees independently was reversed on appeal. We think traditional principles of contract law provided ample forewarning that the remedy for any impermissible waiver of attorneys' fees as a condition of a settlement would be the vacation of the entire settlement. *Cf. Evans*, — U.S. at —, 106 S.Ct. 1537, at n. 13 (collecting sources). The Freemans' waiver of attorneys' fees was clearly a material term of B & B Associates' offer of judgment and not severable from the agreement. Thus, even if an offer of judgment under Rule 68 were no different than an ordinary settlement, appellees could not legitimately claim unfair surprise from our present ruling. In sum, we cannot conclude that any substantial uncertainty over the proper remedy for a coercive Rule 68 judgment requires forgiveness of the need for a cross-appeal.

Moreover, the District Court's judgment itself provided clear warning of the need to file a cross-appeal. That judgment had two distinct components: the Court found the attorney had an independent cause of action for fees but at the same time it specifically rejected the Freemans' argument that their waiver of fees as part of the Rule 68 bargain was unenforceable. The appeal by B & B Associates was specifically limited to the first issue. It follows that the Freemans had to raise the second issue themselves. We simply do not find any exceptional circumstances in this case to excuse their failure to do so.

In their brief to this court, Fox and the Freemans state that they would oppose any vacation of the offer of judgment as that "would do violence to the purposes of Rule 68 and would unfairly burden the district court and the Freemans. The Freemans accepted the offer [of judgment] and will adhere to that decision even if their legal argument on this appeal fails." Brief of Appellees at 21 n. 6. Unfortunately, appellees cannot avoid the consequences of the argument they ask us to consider on appeal. To accept their argument that the offer of judgment was facially invalid under an extension of the principles articulated in *Moore v. National Association of Securities Dealers, Inc.*, 762 F.2d 1093, would require a modification of the judgment of the District Court. There is just no way for appellees to eschew that relief and still prevail on their plea that the Freemans should not have been able to waive attorneys' fees. Thus, appellees' waiver argument can avail them nothing absent a properly filed appeal to modify the judgment of the District Court.

### IV. CONCLUSION

We find that under TILA an attorney has no cause of action for fees separate from and independent of the underlying claim of his client. We therefore vacate the District Court's award of attorneys' fees to Fox. We also find that the failure of appellees to appeal the issue of the validity of the Freemans' waiver of their claim for attorneys' fees precludes our consideration of this point. Accordingly, the offer of judgment, as originally drafted by B & B Associates and accepted by the Freemans, remains binding on the parties.

*So ordered.*