869 F.2d 234
 13 Fed.R.Serv.3d 514
 Stanley PHILLIPS, individually and on behalf of all others
similarly situated
v.
ALLEGHENY COUNTY, PENNSYLVANIA The Allegheny County
Institution District and Charles R. Stowell, Appellants.
 No. 88-3481.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 8, 1988.
Decided March 9, 1989.
Rehearing and Rehearing In Banc Denied April 3, 1989.
 
 James J. Dodaro, Robert L. McTiernan, Dennis R. Biondo (argued), Allegheny County Law Dept. Pittsburgh, Pa., for appellants.
 Donald Driscoll (argued), Neighborhood Legal Services Assoc., Pittsburgh, Pa., for appellee.
 Before SLOVITER and BECKER, Circuit Judges, and FULLAM, District Judge.*
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 
 1
 Defendants Allegheny County, Pennsylvania, The Allegheny County Institution District, and Charles R. Stowell[1] (collectively referred to as County) appeal from the order of the district court awarding attorney's fees to plaintiff Stanley Phillips after the parties had settled Phillips' civil rights action with an express waiver of such fees. We must decide the question presented in light of Evans v. Jeff D., 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986).
 
 I.
 BACKGROUND
 
 2
 Although the merits of the underlying action are not before us, the circumstances leading to the settlement are directly relevant to the issue on appeal. Phillips is a paraplegic suffering from a deep-rooted incubitis, or pressure sore, a condition requiring specialized medical care. After Phillips was advised in September, 1985 that he required inpatient care because of his inability to treat himself, Phillips applied for admission to the Kane Regional Center in Allegheny County, a nursing facility operated by the County for treatment of indigents. Phillips was unable to gain admission to the facility until July, 1986, after he had filed suit against the County under federal and state law to compel his admission and to change the facility's admissions procedures. In October, 1986 Phillips moved for class certification.
 
 
 3
 While he was an inpatient, Phillips allegedly violated a rule prohibiting temporary departures from the facility without a physician's permission. Because of this, Phillips was involuntarily discharged from the facility in the late afternoon on Friday, December 12, 1986. His wallet, identification, money and medical assistance card were all locked in the business office and were unavailable to him until Monday morning. Although a maintenance employee permitted Phillips to remain in the lobby of the Kane Regional Center from Friday evening until Monday morning, Phillips was without necessary medical treatment, food or bathroom facilities for that period.
 
 
 4
 On Monday, December 15, 1986, Phillips amended his previously filed complaint and obtained a temporary restraining order which required the hospital to readmit him and resume treatment of his condition. Phillips' amended complaint also sought injunctive relief requiring the Kane Center to give notice and an informal hearing before denying patients treatment and leaves of absences.
 
 
 5
 The parties engaged in settlement negotiations during December, 1986 and into January, 1987. They were able to agree on changes in the facility's procedures to provide for an explanation for admission and discharge decisions and an opportunity to object before an impartial observer. Although there is some dispute regarding the history of their negotiations over the amount of money to be paid to Phillips and the attorney's fees to be paid to Phillips' counsel, Neighborhood Legal Services Association, it is clear that initially during the negotiations the County asked for a fee waiver, which was rejected by Phillips; that Phillips made a counteroffer of $4,700 for counsel fees, which was rejected by the County; and that the County then offered $500 in counsel fees, which was in turn rejected by Phillips without continuing the negotiations over counsel fees. Instead, the parties agreed to a settlement of $3000 for Phillips which contained the following provision: "The Plaintiff and their counsel agree to waive any and all claims for attorneys fees for which a claim could be made as a result of the filing and settlement of this case or otherwise connected with the above captioned case." App. at 17. The settlement agreement with the fee waiver was signed by counsel for Phillips and the County, and Phillips signed the release. On March 16, 1987, the district court, without holding a hearing, entered an order approving the settlement agreement pursuant to Fed.R.Civ.P. 23(e).
 
 
 6
 Ten days later, on March 26, 1987, Phillips and his counsel, Neighborhood Legal Services Association, moved for attorney's fees in the amount of $13,385.41 notwithstanding the fee waiver. The motion alleged that the County acted improperly by insisting that plaintiff waive any claim for counsel fees, injecting the condition after the settlement terms were largely worked out, and informing plaintiff that the County does not pay counsel fees. The County promptly responded by denying these allegations. Dennis Biondo, an Assistant Allegheny County Solicitor, filed a supporting affidavit which averred that the issue of attorney's fees was discussed simultaneously with the discussion of other issues of a monetary nature; that after the County offered $500 in counsel fees, plaintiff's counsel "abruptly broke off negotiations of this issue and agreed to a waiver of all counsel fees"; that the County was prepared to continue negotiating the counsel fee issue; and that it does not have a policy against payment of counsel fees in civil rights cases.
 
 
 7
 Shortly thereafter, Phillips submitted an affidavit stating that by February, 1987 his condition had improved so that he could manage with outpatient nursing care, and that he accepted the settlement "since at the time I needed the money to set up a household and move." Supp.App. at 4. He stated that he "had to give up a claim for attorneys' fees" to get the settlement money and that he was told by an administrator at the facility "that the County does not pay attorney fees." Id. Phillips' attorney, Donald Driscoll, presented an affidavit stating that the County "insisted" on a waiver of attorney's fees but admitting that plaintiff's counsel rejected the offer of "a nominal amount ($500) for fees." Id. at 7. Driscoll also stated that Phillips insisted on the settlement for the reasons set forth in his affidavit.
 
 
 8
 Over one year later, on June 29, 1988, the district court, without conducting a hearing, awarded Phillips and his counsel $9,615.49 in counsel fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. Sec. 1988 (1982). The district court stated that the fee waiver was obtained by the County "through bad faith negotiations" and that the County's behavior throughout the case was "repugnant and shocking to the conscience." App. at 50. The court concluded that its "desire for justice and equity will not permit the defendants to exploit the plaintiff's direct [sic] physical circumstances to extract from him a waiver of his attorney's fees." Id.
 
 II.
 DISCUSSION
 A.
 Procedure Followed
 
 9
 Before we turn to the specific issue presented by this appeal, we feel compelled to comment on the procedure followed by the district court. Although this action was initiated as a class action, the district court did not follow the procedure required by Fed.R.Civ.P. 23(e) which entails notice to the class of the proposed dismissal or compromise. We do not think the settlement can reasonably be viewed as entered into only on behalf of Phillips, as plaintiff suggests. On the contrary, despite the fact that the agreement states it is not intended to affect any claim of non-named class members, the settlement agreement provides first for a change in the Kane Center's admission procedures and its discharge procedures before settling what it refers to as the individual claims of Phillips.
 
 
 10
 We reiterate that even though an action has not been certified as a class action, an action filed as a class action should be treated as if certification has been granted for the purposes of settlement until certification is denied. See Kahan v. Rosenstiel, 424 F.2d 161, 169 (3d Cir.), cert. denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970); C. Wright, A. Miller & M. Kane, 7B Federal Practice and Procedure Sec. 1797, at 347-50 (2nd ed. 1986). While ordinarily failure to follow the procedure mandated by Rule 23 would necessitate some remedial action, in this case the approval of the settlement is not before us on this appeal. Our jurisdiction is limited to the court's order on the attorney's fee.
 
 B.
 Effect of the Fee Waiver
 
 11
 The County argues that the district court abused its discretion in awarding the attorney's fee because the court ignored the holding of Evans v. Jeff D., relied on erroneous and unsubstantiated factual findings, and erred in concluding that there was evidence of bad faith or unconscionable action by the County to justify overriding the waiver. We consider these arguments in turn.
 
 
 12
 1. Evans v. Jeff D.
 
 
 13
 In Evans v. Jeff D., 475 U.S. 717, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986), the Supreme Court rejected the contention of the civil rights plaintiffs there that as a matter of law section 1988 prohibited waivers of attorney's fees as part of a larger settlement. In that case, children suffering from emotional and mental handicaps sought improvement in the education programs and health care services provided by the State of Idaho. A week before the trial was to begin, defendants offered a settlement which provided substantially all the injunctive relief plaintiffs sought. The settlement was conditioned on a waiver by plaintiffs of any claim for attorney's fees or costs, subject to approval by the district court. The district court refused plaintiffs' counsel's request to approve the settlement but disapprove the waiver of fees. Instead it approved the settlement in its entirety. The Court of Appeals invalidated the attorney's fee waiver, but left the remainder of the settlement standing. The Supreme Court reversed, thereby reinstating the district court's approval of the fee waiver.
 
 
 14
 The Court first noted that the text of the Civil Rights Attorney's Fees Awards Act did not support the proposition that Congress intended to bar all fee waivers "offered in connection with substantial relief on the merits." Id. at 730, 106 S.Ct. at 1539. In fact, the Court believed that a prohibition on fee waivers in exchange for a settlement on the merits would itself interfere with both the settlement of civil rights suits and the vindication of civil rights. Id. at 732, 106 S.Ct. at 1540. In light of its conclusion that neither the statute nor the legislative history suggests that Congress intended to forbid "all " waivers of attorney's fees, id. at 731, 106 S.Ct. at 1539, the Court rejected a per se rule.
 
 
 15
 The Court next considered whether the district court in that case had abused its discretion under Rule 23(e) by approving a settlement which included a fee waiver. The Court noted that plaintiffs and certain amici variously asserted that a defendant could not properly demand fee waivers as a standard practice, when it had no defense on the merits, or as a means to punish plaintiff's counsel for bringing such a suit. Id. at 739-40, 106 S.Ct. at 1543-44. The Court declined to address these arguments, however, because the record failed to suggest that Idaho was pursuing such a policy or practice. The Court held that in light of the district court's finding that the fee waiver was given in return for an adequate quid pro quo from defendant, the district court did not abuse its discretion in giving effect to the waiver. Id. at 741, 106 S.Ct. at 1545.
 
 
 16
 2. The District Court's Override of the Waiver
 
 
 17
 In this case, the district court attempted to distinguish Evans, stating that here the waiver of attorney's fees was obtained by the defendants "unlike the Evans case ... without the approval of this District Court." App. at 50. This statement is clearly erroneous as a matter of historical fact. The record before us shows that the settlement agreement with the express waiver of fees was in fact presented to and approved by the district court, which entered an order to that effect.
 
 
 18
 It also appears that the district court failed to take any cognizance of the County's answer to the motion for fees and the counter-affidavit filed by the County's attorney. Had the district court held a hearing on the motion for attorney's fees, the expected course when there are opposing affidavits on file, there would have been an opportunity for the County to correct the court's mistaken assumption with respect to its own prior approval and to be heard as to the County's version of the course of the parties' negotiations.
 
 
 19
 The court's action in approving the settlement and then overriding the waiver is directly contrary to the Supreme Court's directions. That Court made clear in Evans that a district court may not impose a settlement on the parties other than the one to which they agreed. Id. at 727, 106 S.Ct. at 1537. See Huertas v. East River Housing Corp., 813 F.2d 580, 582 (2d Cir.1987) (when defendants intended otherwise, the district court judge "acted without authority when he ordered defendants to be bound by the proposed stipulation of settlement when they had not yet agreed with respect to the attorneys' fees to be awarded to plaintiffs"); Freeman v. B & B Assocs., 790 F.2d 145, 153 (D.C.Cir.1986) ("the remedy for any impermissible waiver of attorneys' fees as a condition of a settlement would be the vacation of the entire settlement").
 
 
 20
 The Supreme Court outlined the appropriate procedure to be followed by an attorney for a civil rights plaintiff who is faced with a settlement proposal which is acceptable to the client on the merits but which is tied to a waiver of attorney's fees which the attorney and client find objectionable. As the Court stated,
 
 
 21
 The options available to the District Court were essentially the same as those available to respondents: it could have accepted the proposed settlement; it could have rejected the proposal and postponed the trial to see if a different settlement could be achieved; or it could have decided to try the case.
 
 
 22
 475 U.S. at 727, 106 S.Ct. at 1537. We reject Phillips' suggestion that this is dictum which we are free to disregard. Although we are cognizant that the Evans opinion may create tensions for counsel for civil rights plaintiffs in negotiating settlements, we, as well as the district courts, are bound by the holding and its rationale.
 
 
 23
 We need not reach Phillips' argument that here, unlike in Evans, there was no quid pro quo for the waiver of the fee. Had there been any merit to this argument, it should have been raised with the district court before the settlement containing the fee waiver was approved.
 
 
 24
 3. "Bad faith negotiations" and "Unfair advantage"
 
 
 25
 We can hypothesize circumstances in which an entire settlement would be voidable because the fee waiver was effected through fraud and duress. In this case, the district court explained its override of the fee waiver by characterizing the waiver as obtained "through bad faith negotiations." We have examined the record to see if there is a basis to support the district court's conclusion, and find there is none.
 
 
 26
 In this connection, it is important to distinguish between the County's conduct which formed the basis of Phillips' claim on the merits and its conduct of the settlement negotiations. Although we share the district court's dismay at the County's action in leaving Phillips unattended and without food, funds, and sanitary facilities for an entire weekend, action the district court characterized as "repugnant and shocking to the conscience of [the] Court," App. at 50, the fee waiver cannot be overridden on that ground.
 
 
 27
 Phillips produced no evidence that the waiver was procured by duress, bad faith or unconscionable conduct. The only reason the district court gave for its conclusion of bad faith negotiations was that "the defendant took unfair advantage of the plaintiff's urgent need to settle his case and was able to obtain a waiver of attorney's fees because of the plaintiff's pressing circumstances." App. at 50. The fact that one party needs the settlement more than the other, a not uncommon circumstance, cannot in itself constitute bad faith negotiations. In Evans, the Court acknowledged the "conflicting interests" facing plaintiffs' attorneys in such circumstances, Evans, 475 U.S. at 727, 106 S.Ct. at 1537, and even noted that a lawyer's ethical obligations might require that s/he accept a fee waiver, id. at 728 & n. 14, 106 S.Ct. at 1538 & n. 14. It follows that the mere negotiation of a fee waiver with a needy client cannot in itself constitute bad faith, much less fraud or duress, sufficient to justify vacating an already executed settlement containing a fee waiver. In light of our holding, we need not reach the difficult question of the remedy for a waiver obtained through duress when the settlement, as here, has already been executed and cannot be undone.
 
 
 28
 As we suggested above, we are indeed concerned about the effect in civil rights litigation if defendants persist in demanding fee waivers. It has not come to our attention that this has occurred in the three years since Evans. Moreover, we are confident that if such a situation is raised with the district court in a timely fashion, that court can assume the active managerial role contemplated by Fed.R.Civ.P. 16, see in particular Rule 16(a)(5) and (c)(7), to assist the parties in reaching a reasonable solution. See Panola Land Buying Ass'n v. Clark, 844 F.2d 1506, 1518-19 (11th Cir.1988) (Clark, J., dissenting).
 
 
 29
 Moreover, plaintiff's counsel in this case is hardly in the position to complain about the ethical dilemma that may face others. By accepting the settlement, signing the documents which stated that Phillips and his counsel agreed to waive counsel fees, and failing to advise the district court when he presented the settlement of his disapproval of that term because he did not want to impair the settlement, Phillips' counsel followed a course of action patently inconsistent with Evans. A party or attorney who wishes to complain of an unfairly obtained fee waiver must register a complaint with the district court before any required approval is obtained. In any event, we find no support for the court's castigation of the behavior of the County's attorneys.
 
 III.
 CONCLUSION
 
 30
 In summary, the Evans decision precludes the district court from amending the settlement agreement to override a fee waiver after the agreement has been executed. The negotiation of a settlement with a fee waiver, even with a client who urgently needs to settle, does not in itself constitute overreaching or fraud. Nothing on this record warrants the district court's failure to give effect to the fee waiver which was part of the agreement it approved. Accordingly, we will reverse the order of the district court awarding Phillips and his counsel attorney's fees.
 
 
 
 *
 Hon. John P. Fullam, Chief Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 Charles Stowell is apparently a County employee, but he is not further identified in the amended complaint or other documents submitted in the appendix