**In re: Cherice J. ANDERSON, Debtor.**

**Cherice Anderson, Plaintiff,**

**v.**

**American International Mortgage Bankers, Inc., Homeside Lending, Inc., Midland Mortgage Co., Midfirst Bank, New York Capital Exchange Corp. and Julie Mansouri, Defendants.**

**Bankruptcy No. 03 85135 511.**
**Adversary No. 04–8365–511.**

United States Bankruptcy Court, E.D. New York.

Feb. 9, 2007.

William A. Gomes, Rockville Centre, NY, for the Debtor.

Weinberg Gross & Pergament, LLP, Garden City, NY by Marc A. Pergament, for Plaintiff, Marc A. Pergament as Chapter 7 Trustee of the estate of Cherice Anderson.

Eschen, Frenkel & Weisman, LLP, Bay Shore, NY, by Joseph F. Battista, for Defendant, Washington Mutual Bank as successor-in-interest to HomeSide Lending Inc., Midland Mortgage Co. and Midfirst Bank.

## MEMORANDUM DECISION

MELANIE L. CYGANOWSKI, Chief Judge.

### (Re: Motion of William A. Gomes, Esq., For Allowance of Attorney's Fees)

Before the Court is a motion by William A. Gomes, Esq. ("Gomes" or "Debtor's Counsel") seeking allowance of fees for legal services that he provided to the Debtor in this bankruptcy case which initially sought relief under Chapter 13 and was thereafter converted to Chapter 7. Gomes seeks payment of these fees either by certain defendants in the instant adversary proceeding, *i.e.*, Washington Mutual Bank, F.A., as successor-in-interest to Defendants, HomeSide Lending Inc., Midland Mortgage Co. and Midfirst Bank (the "Settling Defendants"), or by the Debtor's estate "as determined by the [C]ourt." The Settling Defendants oppose the motion stating that any fees sought by Gomes should not be surcharged against them beyond the scope of their settlement with the Chapter 7 Trustee ("Trustee"). For his part, the Trustee, on behalf of the estate, does not oppose Gomes's motion. As set forth below, Gomes's request for fees is partially granted and that part of his fees which were incurred at a time when he served as Debtor's counsel while the case was pending under Chapter 13 will be allowed as a general unsecured claim against the estate.

## Background

In or about September 1998, the Debtor's parents, Frank and Daphne Anderson (the "Andersons") refinanced the existing mortgage on their real property located at 862 Woodfield Road, West Hempstead, New York (the "Premises"). Sometime thereafter, the secured creditor, Chase Bank of Texas, commenced a foreclosure action in the courts of the State of New York. At that time, a mortgage broker named Julie Mansouri ("Mansouri"), a defendant herein, representing herself to be employed by New York Capital Exchange Corp. ("New York Capital"), advised the Andersons that she could help them prevent foreclosure by obtaining a refinance of their loan.

The Andersons paid Mansouri a cash payment of $3,600 for her assistance. Mansouri thereafter obtained a new loan for the Andersons through American International Mortgage Bankers, Inc. ("AIMB"). As part of the refinance, Mansouri advised the Andersons to transfer their interest in the Premises to their then twenty-four year old daughter, Cherice Anderson (the "Debtor" or "Plaintiff"). At the closing, the Andersons executed a deed in favor of the Debtor.

AIMB subsequently assigned the mortgage to Homeside Lending, Inc. ("Homeside") on May 29, 2001. Midland Mortgage Company ("Midland") is either the successor in interest to, or the assignee of, Homeside. Midfirst Bank, New York ("Midfirst") is either the successor in interest to, or the assignee of, Midland.[1]

On July 28, 2003, the Debtor met with Gomes regarding a notice she received of an adjourned foreclosure sale of the Premises that was scheduled for August 5, 2003.

---

1. Washington Mutual Bank, FA filed an Answer asserting that it is the successor in interest to Homeside, Midland and Midfirst.

On July 31, 2003, the Debtor signed a written retainer agreement employing Gomes to commence a Chapter 13 bankruptcy filing on her behalf. The retainer also contained provisions regarding the commencement of an adversary proceeding to address alleged illegalities of the loan originated by AIMB. Specifically, the retainer agreement provides:

> For my representation in connection with this possible HOEPA claim you agree to pay me a reasonable fee based upon an hourly rate of $300.00. I have advised you of your probable right to sue for those attorney's fees as part of your damages. Assuming that it is permitted, as part of that action I will sue for such fees which will be based upon my normal litigation rate of $300.00 per hour. This hourly rate shall include time spent in telephone conversations, negotiations, research, drafting of pleadings, stipulations and/or other documents in connection with your case, conferences, depositions, court appearances and travel time. Any fees awarded by the court *and collected* from the defendant will be credited to your account, i.e., if the amount awarded exceeds the hourly charge, you will not be liable for any further fee. If the amount awarded is less than the full hourly fee, then you will be liable for the balance from the proceeds of whatever is collected. However, any fee charged to you in connection with the HOEPA claim shall be subject to the approval of the Bankruptcy Court or any other court to which the matter may be transferred by such Court.

(Exhibit 1 to the Fee Motion, described below) (emphasis in original).

On August 4, 2003, the Debtor filed the instant Chapter 13 bankruptcy case. Midland filed a secured proof of claim in the amount of $205,990.19 on August 29, 2003. The only other proof of claim filed in the case was on account of a secured auto loan in the amount of $12,850.35.

As discussed more fully below, the instant adversary proceeding was commenced in late May 2004. On May 2, 2005, while the adversary proceeding was still pending, the Debtor voluntarily converted this case to a case under Chapter 7 of the Bankruptcy Code. Marc A. Pergament, Esq., is the duly appointed, qualified and acting Chapter 7 Trustee in this converted case. As Trustee, Pergament was substituted as the proper party plaintiff in the adversary proceeding.

### *The Instant Adversary Proceeding*

With the assistance of Gomes as counsel, the Plaintiff commenced this adversary proceeding ("Adversary Proceeding") by a Complaint, dated May 29, 2004. The Complaint sets forth twelve separate claims under both federal and New York laws including, *inter alia,* the Truth in Lending Act ("TILA") (15 U.S.C. § 1601 *et seq.*), the Home Ownership and Equity Protection Act ("HOEPA") (15 U.S.C. § 1639), the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. § 2601 *et seq.*), New York Deceptive Practices Act (N.Y. Gen. Bus. Law § 349), breach of fiduciary duty, fraud, unconscionability, and civil conspiracy. The Complaint seeks both rescission of the loan and damages, including punitive damages. The Complaint alleges, among other things, that:

- at no time prior to the loan closing were the Debtor or her parents advised of the amount of the loan or the expenses related to the loan (Complaint ¶ 62);
- at no time were they given a chance to read the loan documents prior to signing them and the terms of the loan were not explained to them (Complaint ¶ 66);
- at no time were they advised of what the total monthly mortgage payment would be (Complaint ¶ 67);

• the Debtor and her parents only learned after the closing that the monthly mortgage payment would be $1,887.64 which is an amount in excess of the Debtor's net monthly earnings (Complaint ¶ 69);

• the TILA Disclosure presented to the Debtor at the closing was for an amount $6,000 lower than the actual loan amount (Complaint ¶ 74); and

• AIMB failed to provide the required disclosures under HOEPA prior to the execution of the loan documents (Complaint ¶ 81).

Washington Mutual Bank, FA ("Washington Mutual"), as successor in interest to Homeside, Midland and Midfirst, filed an Answer on August 3, 2004. New York Capital filed an Answer on March 1, 2005.[2] According to the Court's review of the docket, it appears that the remaining defendants, AIMB and Mansouri, have defaulted in this action.

On April 20, 2005, Washington Mutual filed a motion for summary judgment. A hearing on the motion was scheduled for May 9, 2005 and the deadline for objections was May 6, 2005—both dates coming close after the May 2, 2005 conversion date. Despite the fact that the case was converted to Chapter 7 on May 2, 2005, Gomes prepared and filed opposition to the motion for summary judgment on May 5, 2005, as Debtor's counsel. Gomes appeared at the hearing on the Debtor's behalf on May 9, 2005 and the motion for summary judgment was denied.

Because of the conversion to Chapter 7, the Trustee succeeded to all of the Debtor's rights to prosecute the lawsuit and stepped into the Debtor's shoes as plaintiff. Despite this, in early May 2005, Gomes appeared to be the only party acting on behalf of the estate. The record is unclear as to the exact date of the Trustee's appointment although it does appear that he was added to the case as a party on May 7, 2005.

Ultimately, the Chapter 7 Trustee engaged in settlement discussions with the Settling Defendants, and by motion dated February 2, 2006 (the "Settlement Motion"), the Trustee sought approval of a settlement of the Adversary Proceeding. By its terms, the Settlement Motion clearly contemplated a global settlement with the Settling Defendants of all issues. Pursuant to the Stipulation, Midland's secured claim was reduced downward from $232,563.27 (including accrued interest and property taxes), plus interest of $3,000 per month accruing from November 30, 2005, to $211,500. In the Settlement Motion, the Trustee states that "reducing the claim, . . . will ensure that the Debtor will realize a substantial surplus distribution from the Estate."[3] (Settlement Motion ¶ 14). The Settlement Motion was served on notice to all parties including the Debtor and Gomes. No opposition was interposed by Gomes or any other party. By Order entered on March 23, 2006, the Settlement Motion was approved in all respects.

In the meantime, apparently, there was sufficient equity in the Debtor's Premises to warrant a sale by the Trustee. On September 1, 2005, the Trustee filed a motion to approve the sale of the Premises to a third party buyer for $349,200. The sale was approved by this Court and on September 26, 2005, the Trustee was given

---

**2.** On August 2, 2006, the Trustee and New York Capital stipulated to discontinue this lawsuit without prejudice as against New York Capital.

**3.** By this Court's calculation, the net being held by the Trustee should be in excess of $100,000. ($349,200 less $10,000 homestead exemption, less $17,640 broker fee, less $211,500 negotiated mortgage balance, equals $110,060).

the authority to (a) sell the Premises, (b) pay the Debtor her $10,000 homestead exemption under N.Y. Civ. Prac. L. & R. 5206 (McKinney 1997), and (c) pay a real estate broker $17,460 in connection with the sale. According to the sale motion, however, the Trustee explained that there was an adversary proceeding pending against the first mortgagee contesting the mortgage and no payment would be made on the mortgage until that litigation was resolved.

### Gomes's Fee Motion

By motion dated February 16, 2006 (the "Fee Motion"), Gomes seeks allowance of his fees incurred for legal services rendered to the Debtor in the underlying bankruptcy case and in the instant adversary proceeding. Gomes provides a detailed fee schedule of services rendered on behalf of the Debtor in the Chapter 13 and Chapter 7 proceedings. The Fee Motion states that Gomes billed 52.25 hours at $300 per hour ($15,675), and incurred $36.10 in expenses, all related to the adversary proceeding (Fee Motion ¶ 24 and Exhibit 2). In addition, Gomes seeks $1,800 in fees and $15 in expenses related to his representation of the Debtor (aside from the adversary proceeding) which fees were not covered by his initial retainer. (Fee Motion ¶ 13).

Gomes contends that under TILA and HOEPA, he is entitled to receive payment of all or part of his fees from the Settling Defendants because those statutes permit a plaintiff to recover counsel fees from a defendant in a "successful action." *See* 15 U.S.C. § 1640(a). He argues that the Trustee's settlement with the Settling Defendants resulted in a substantial reduction in the amount claimed to be owed on the Midland mortgage and therefore qualifies as a "successful action" under the statute. Gomes credits himself for the Trustee's successful conclusion to the litigation with the Settling Defendants.

Alternatively, although he does not specify under what theory, Gomes seeks to have his fees paid by the Debtor's estate.

Assuming fees are awarded, Gomes argues that his fees are reasonable under the twelve factors of the Lodestar analysis set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974).[4] (*See* Memorandum of Law in support of Fee Motion.)

The Settling Defendants oppose the Fee Motion to the extent that Gomes is seeking payment of his fees from them above and beyond the amount of the settlement with the Trustee. They argue that the settlement was intended to settle "ALL" issues in the adversary proceeding. (Opposition ¶ 5). The Settling Defendants also argue that Federal Rule of Bankruptcy Procedure 2016(a), upon which Gomes's Fee motion is based, provides that a debtor's counsel may be reimbursed by the bankruptcy estate under certain circumstances, but it does not permit a debtor's counsel to receive fees from the defendants in the adversary proceeding. Finally, the Settling Defendants state that when the case was converted to Chapter 7, the Debtor, and consequently Debtor's Counsel, lost standing to pursue the relief in the adver-

---

4. The twelve factors used to determine the calculation of attorney's fees using the Lodestar method are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Georgia Highway Express*, 488 F.2d 714, 717–19 (5th Cir.1974).

sary proceeding complaint because the assets of the estate passed to the Chapter 7 trustee. *See, e.g., In re Eisen,* 31 F.3d 1447 (9th Cir.1994) (holding that Chapter 7 debtor may not appeal an order dismissing Trustee's Chapter 7 adversary proceeding because Trustee was the representative of the estate).

### *DISCUSSION*

The issue before the Court is whether the Debtor's Counsel should receive payment of his fees directly from the Settling Defendants or whether those fees should be paid by the estate, or by neither. No one, including the Debtor, the Trustee or the Settling Defendants, has disputed the reasonableness of his fees or that they benefitted the estate.

### *Fees and Expenses Under TILA and HOEPA*

15 U.S.C. § 1640 imposes civil liability for violations of TILA. One form of civil liability is the imposition of costs in favor of a successful plaintiff. Specifically, Section 1640(a) provides,

> Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part ... with respect to any person is liable to such person in an amount equal to the sum of -
>
> (3) in the case of any *successful action* to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court ...

15 U.S.C. § 1640(a)(3) (1998) (emphasis added).

For purposes of this decision, the Court will assume (without deciding) that the settlement in this case (which resulted in a substantial decrease in the mortgage balance) would be deemed a "successful action" under TILA. *See Gram v. Bank of Louisiana,* 691 F.2d 728 (5th Cir.1982) (finding that awarding attorney's fees only in cases where rights are vindicated after a full-blown trial would discourage consumers from seeking judicial relief for violations of the Act).

■ Although TILA does include a fee shifting provision for plaintiffs in "successful actions" to recover attorney's fees, there does not appear to be any basis upon which to require the Settling Defendants to compensate Gomes for his services above and beyond the settlement with the Trustee. The decision of *Freeman v. B & B Associates,* 790 F.2d 145 (D.C.Cir.1986), is instructive on this point. In the *Freeman* case, the plaintiffs in a TILA action, through their counsel, accepted from the defendants an offer of judgment which provided for rescission of the mortgage note and a monetary restitution amount. Subsequent to the settlement, the plaintiff's counsel sought to recover attorneys' fees from the defendants under TILA. The District Court held that the offer of judgment did not explicitly bar the attorney's independent claim for fees and awarded counsel fees under TILA. The Circuit Court reversed and found that there is no independent right of action given to counsel under Section 1640(a). Specifically, the Circuit Court found that the unambiguous words of the statute state that the liability to the plaintiff for counsel fees under Section 1640(a) is *only* to the plaintiff. The Court held that

> Section 1640 states that "any creditor who fails to comply with any [disclosure] requirement ... with respect to *any person* is liable to *such person* in an amount equal to ... the costs of the action, together with a reasonable attorneys' fee as determined by the court." 15 U.S.C. § 1640(a) (emphasis supplied). In other words, under the statute the creditor is liable for attorneys' fees to

the person to whom the creditor failed to make the required TILA disclosures, *i.e.,* to the *borrower.* We find nothing in the words of the statute suggesting any right to fees in an attorney which is independent and separate from the right of the borrower-client to collect attorneys' fees. *See also Smith v. South Side Loan Company,* 567 F.2d 306, 307 (5th Cir.1978) (award of attorneys' fees is right of party suing, not his attorney); *cf. Evans v. Jeff D.,* 475 U.S. 717, 730 & n. 19, 106 S.Ct. 1531, 1539 & n. 19, 89 L.Ed.2d 747 (1986) (Congress bestowed statutory eligibility for attorneys' fees under 42 U.S.C. § 1988 on party, not attorney).

*Freeman,* 790 F.2d at 148–49 (emphasis in original).

The Court relies upon the reasoning of the *Freeman* Court in finding that Gomes does not have a right, separate and apart from the plaintiff's, to seek payment of his counsel fees directly from the Settling Defendants. This Court is aware of at least one case which holds to the contrary— *James v. Home Construction Company of Mobile, Inc.,* 689 F.2d 1357 (11th Cir. 1982)—and declines to follow that case for the reasons set forth in *Freeman. See Freeman,* 790 F.2d at 149–50 (distinguishing *James* ).

■ Even if the Court found that Gomes had a separate right to recover attorney fees under TILA, the Court is persuaded that the Settling Defendants are entitled to the benefit of their bargain with the Trustee. To burden the Settling Defendants with Gomes's fees at this juncture would be manifestly unjust. The Settling Defendants are fully justified in believing that their settlement encompassed all future claims arising out of the adversary proceeding, including attorney's fees mentioned in the Complaint. The Stipulation of Settlement specifically stated that upon its approval by the Bankruptcy Court,

> ... [T]he Trustee and the Debtor's Estate shall be deemed to have, and shall have, released and forever discharged [the Settling Defendants] from any and all claims and causes of action of whatever kind, nature, character and description, whether in law or equity, whether in tort, contract or under other applicable law, whether known or unknown, whether liquidated or unliquidated, whether contingent or fixed, and whether anticipated or unanticipated, which the Trustee and the Debtor's Estate have, had, may ever have or may ever claim to have against [the Settling Defendants.]

Despite its genesis with the Debtor as plaintiff and Gomes as Debtor's counsel, the fact remains that the Trustee ultimately succeeded to any and all of the Debtor's rights and responsibilities with respect to the adversary proceeding. Gomes knew this. He received notice of the settlement and had the opportunity to oppose but he did not. Although the Stipulation of Settlement does not specifically waive the Trustee's right to seek counsel fees against the Settling Defendants, the Court believes there is no other interpretation of the foregoing language in the stipulation that would lead to a just result. Since there was no provision for the payment of attorney's fees in the settlement, any right Gomes may have had was lost upon approval of the settlement.

Although not briefed in his Memorandum of Law, Gomes's Fee Motion includes what can be viewed as a passing request for fees under the provisions of HOEPA. (*See* Declaration of Attorney ¶ 17). HOEPA's statutory scheme provides for the utilization of the TILA provision with respect to prevailing party counsel fees. *See* 15 U.S.C. § 1640(a)(3). Accordingly, the

above discussion and analysis regarding the unavailability of fees in this case under the provisions of TILA is incorporated herein and this Court therefore declines to award Gomes fees under HOEPA for the reasons stated above.

### Fees and Expenses Under the Bankruptcy Code

Having concluded that Gomes is not entitled to recover his fees directly from the Settling Defendants, the Court looks to whether there is any basis to award fees that would be paid by the estate under the Bankruptcy Code.

### Pre-conversion Fees

Normally, a professional seeking compensation from a bankruptcy estate does so under Bankruptcy Code § 330(a) which provides, in relevant part, that:

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, *or a professional person employed under section 327 or 1103—*

    (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

    (B) reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1) (emphasis added). More specific to this case, Bankruptcy Code § 330(a)(4)(B) provides that:

In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B).

Bankruptcy Code § 330(a)(3) further provides that:

In determining the amount of reasonable compensation to be awarded the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including -

    (A) the time spent on such services;

    (B) the rates charged for such services;

    (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

    (E) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

■ Based upon the undisputed record, the Court is fully prepared to find that (i) Gomes's services to the Debtor during the Chapter 13 case were "actual and necessary;" (ii) Gomes was clearly representing the Debtor's interests during that time and that his services conferred a direct and identifiable benefit upon the Debtor; and (iii) his fees are reasonable under the guidelines set forth in Section 330(a)(3). Upon review of the Fee Motion and its attachments, the Court is satisfied that the factors set forth in Bankruptcy Code Section 330(a)(3) have been complied with. A

line item review of each of the services rendered by Gomes is not necessary. Suffice it to say that without these services the case would not have proceeded and a valuable estate asset, *i.e.*, the adversary proceeding, could have been lost. Gomes initiated and preserved the adversary proceeding against the Settling Defendants which ultimately resulted in a substantial decrease in the mortgage arrears. Even were this not the case, Gomes's time entries for these services show that the time spent is reasonable and commensurate with the complexity, importance, and nature of the problem, issue, or task addressed throughout this case; his rates charged for such services were commensurate with an attorney of his experience in this area and compare favorably to customary compensation charged by comparably skilled practitioners. A review of Gomes's time sheets annexed as Exhibit 2 to the Fee Motion shows that he billed 34.85 hours towards prosecution of the adversary proceeding prior to conversion to Chapter 7. His billing rate is $300/hour which makes a total fee of $10,455 related to the adversary proceeding. Gomes also seeks compensation, not on an hourly basis, for representing the Debtor's interests in connection with the Chapter 13 case. The fees for such services equal $1,450 plus $15 expenses.[5]

██ Although fees granted pursuant to Section 330(a) normally would be paid as a first priority claim under §§ 726(a)(1), 507(a)(1) and 503(b)(3), the conversion of the case to Chapter 7 changes the priority of Gomes's fee claim. Section 348(d) teaches that when a case is converted from Chapter 13 to Chapter 7, a "claim against the estate or the debtor that arises after the [Chapter 13 case filing] but before conversion ..., other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition."[6]  11 U.S.C. § 348(d). The consequence is that Gomes's claim for fees incurred during the Chapter 13 case is relegated to the status of a general unsecured pre-petition claim. *See, e.g., In re Benjamin Coal,* 978 F.2d 823, 826–27 (3d Cir.1992).

### Post–Conversion Fees

██ Although Gomes may be compensated for his pre-conversion services that

---

**5.** The Chapter 13 services to which the Court refers include:

   (a) Three appearances (@ $200 per appearance) on the issue of the petitioner's failure to be current with her plan payments. Total $600;

   (b) Preparation of opposition and court appearance on Trustee's motion to dismiss petition. Total $350; and

   (c) Conversion to Chapter 7 proceeding and attendance at 341 meeting. Total $500, plus $15 conversion fee.

Overall, the total for all these services is $1,450. Gomes also requested $350 for preparing and filing opposition to the Settling Defendants' motion for relief from stay on May 5, 2005. For the reasons that follow, the Court finds that for such services rendered after the conversion to Chapter 7 are not compensable from the estate.

**6.** An argument could be made that Gomes is entitled to his fees under Section 503(b) of the Code as an "actual, necessary costs and expenses of preserving the estate." Bankruptcy Code § 503(b) provides, in relevant part, that:

   After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

   (1) (A) the actual, necessary costs and expenses of preserving the estate including—
   (i) wages, salaries, and commissions for services rendered after the commencement of the case...

11 U.S.C. § 503(b). The economics of this case, however, do not appear to require such an analysis. It appears that there are no filed unsecured claims in the case (other than the one just created for Gomes's Chapter 13 counsel fees) and the Chapter 7 Trustee is holding in excess of $100,000 for distribution.

directly benefitted the estate, the Supreme Court has clearly held that a Chapter 7 debtor's counsel is not entitled to receive compensation from a debtor's estate unless counsel is employed by the Chapter 7 Trustee under 11 U.S.C. § 327. *Lamie v. U.S. Trustee,* 540 U.S. 526, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (holding that in a chapter 7 proceeding, a debtor's attorney not retained under § 327 is not eligible for compensation). This is so even though Gomes's efforts in opposing the Settling Defendants motion for summary judgment clearly were necessary and beneficial to the estate in the absence of a yet-active Chapter 7 Trustee. Gomes's time records show that he continued to represent the Debtor for 17.4 hours even though he was not retained by the Chapter 7 trustee pursuant to § 327.

Accordingly, upon the conversion of this case to Chapter 7 on May 2, 2005, Gomes was no longer eligible to receive compensation from the estate absent retention by the Trustee. Regrettably, the Trustee did not engage Gomes in this matter. Instead, he engaged Weinberg Gross & Pergament, LLP (the "Weinberg Firm") as his general counsel. Subsequent to the hearing on the motion for summary judgment, the Weinberg Firm took over prosecution of this adversary proceeding.

Because Gomes was not retained during the Chapter 7 pendency of this case, he is precluded from collecting fees for services that he rendered after the conversion. Accordingly, the Court denies that portion of the Fee Motion which seeks compensation for 17.4 hours post-conversion all at an hourly rate of $300 per hour (total fees of $5,220). In denying this portion of Gomes's request, the Court wishes to commend Gomes for the exemplary services that he rendered which undoubtedly preserved the assets of the estate. While the Court is aware of the fact that the gratitude of the Court, the Trustee, and the

Debtor is no salve for the sting of having these fees denied, it is unfortunately the only compensation that it can offer.

### Conclusion

For all these reasons, the Court grants Gomes's request for compensation for 34.85 hours related to the adversary proceeding while the case was pending in Chapter 13 at an hourly rate of $300 per hour for a total of $10,455.00 in fees. Pre-conversion costs related to the adversary proceeding are also awarded in the sum of $36.10. Gomes is also awarded fees equal to $1,450, plus $15 expenses for services rendered to the Debtor during the Chapter 13 case. The remainder of Gomes's fee request is denied.

A separate order consistent with this Decision is entered on this day. The Clerk is directed to serve a copy of this Memorandum Decision and accompanying Order upon each of the affected parties.