**The PEOPLE of the State of Colorado, Complainant**

v.

**Alison MAYNARD, Respondent.**

**No. 09PDJ028.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

May 27, 2010.

Attorney Regulation. The Hearing Board suspended Alison Maynard (Attorney Registration Number 16561) for one year and one day. Maynard threatened to sue witnesses if they testified in a hearing concerning her attorney's fees, and she also attempted to secretly negotiate with an opposing party for additional attorney's fees in order to avoid sharing those fees with her former clients. Maynard's conduct constitutes grounds for the imposition of discipline pursuant to C.R.C.P. 251.5 and violated Colo. 8.4(c) and 8.4(d).

### DECISION AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(b)

On April 6, 2010, a Hearing Board composed of BARBARA WEIL LAFF, a member of the Bar, BARBARA A. MILLER, a citizen Hearing Board Member, and WILLIAM R. LUCERO, the Presiding Disciplinary Judge ("PDJ"), commenced a three-day hearing pursuant to C.R.C.P. 251.18. APRIL M. McMURREY appeared on behalf of the Office of Attorney Regulation Counsel ("the People"), and ALISON MAYNARD appeared *pro se*. The Hearing Board now issues the following "Decision and Order Imposing Sanctions Pursuant to C.R.C.P. 251.19(b)."

## I. *ISSUE*

It is professional misconduct for a lawyer to engage in deceitful conduct or conduct prejudicial to the administration of justice. In an effort to collect attorney's fees after withdrawing from a case, Respondent threatened to sue witnesses subpoenaed to an attorney's fees hearing, and attempted to halt a global settlement between her former clients and defendants regarding attorney's fees. She also attempted to secretly negotiate with defendants for additional attorney's fees in order to avoid sharing those fees with her former clients. What, if any, is the appropriate sanction?

## II. *SUMMARY*

After careful consideration of the testimony, exhibits and arguments of counsel, the Hearing Board finds clear and convincing evidence Respondent violated the Colorado Rules of Professional Conduct, as set forth below:

- Claim I, Colo. RPC 8.4(c) (it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation).
- Claim III[1], Colo. RPC 8.4(d) (a lawyer shall not engage in conduct prejudicial to the administration of justice).

After representing George and Patricia Barilla ("the Barillas") in contentious litigation lasting more than ten years, Respondent prevailed in the Colorado Court of Appeals on some but not all claims against Gary Magness, a land developer, and others ("the Magness Defendants"). On remand, the Court of Appeals directed the trial court to conduct a hearing on attorney's fees to be awarded the Barillas under the Colorado Common Interest Ownership Act ("CCIOA").

Before the court could conduct a hearing to determine the Barillas' attorney's fees, Respondent withdrew as counsel, and the Barillas hired a new attorney. When it was clear the Barillas would settle the attorney's fees issue for an amount Respondent thought

unfair, she threatened to sue witnesses if they testified in the Barillas' attorney's fees hearing, and she attempted to secretly obtain additional attorney's fees from the Magness Defendants so as to avoid sharing that recovery, even though she had agreed to split the gross amount collected with the Barillas.

We find Respondent's conduct deceitful and prejudicial to the administration of justice, as more fully set forth below. Accordingly, the Hearing Board suspends Respondent from the practice of law for a period of one year and one day consecutive to any other sanction Respondent is currently serving, with reinstatement contingent on compliance with the disciplinary rules and an independent medical examination.

## III. *PROCEDURAL HISTORY*

On March 31, 2009, the People filed a Complaint against Respondent, which alleged she violated Colo. RPC 8.4(c) and 8.4(d). Respondent filed an Answer on April 23, 2009. During an At–Issue Conference, the PDJ scheduled the matter for a three-day hearing to commence on April 6, 2010. The parties filed pre-hearing motions and the PDJ denied them. Immediately prior to the hearing, the PDJ sanctioned Respondent for failing to comply with the PDJ's order to exchange pre-hearing materials with the People; the PDJ instructed the Hearing Board members they could consider Respondent's failure to timely file pre-hearing materials in assessing her credibility, or for any other purpose they considered relevant.

During the hearing, the Hearing Board heard testimony and the PDJ admitted the People's exhibits 1–8, 13–20, 22–24 and 26–38, and Respondent's exhibits A–H, portions of exhibit I,[2] J, M, N, S–W and AA–FF. Respondent moved for a directed verdict, and the PDJ held his decision in abeyance during the hearing. After considering it in the light most favorable to the People, the PDJ hereby denies Respondent's motion.

---

1. Claim II of the Complaint, alleging Respondent violated Colo. RPC 1.2(a), was dismissed after Respondent moved for judgment on the pleadings and the People did not object.

2. Exhibit I, pages 2–9, 13–17, 29–30, 32–25, 37, 39–44, 47, 56–62, 64, 68–70, 75–84, 86–93, 95–106, 114, 116 and 119–122.

## IV. FINDINGS OF FACT AND RULE VIOLATIONS

The Hearing Board finds the following facts and rule violations have been established by clear and convincing evidence:

### Jurisdiction

Respondent took and subscribed the oath of admission and was admitted to the bar of the Colorado Supreme Court on May 20, 1987. She is registered upon the official records, Attorney Registration No. 16561, and is therefore subject to the jurisdiction of this Hearing Board in these disciplinary proceedings pursuant to C.R.C.P. 251.1(b). Respondent's registered business address is P.O. Box 22135, Denver, Colorado 80222.

### Background

In 1997, Respondent was retained by the Woodside Park Units 5 and 6 Homeowners' Association ("HOA") to represent its interests concerning ongoing construction of a road across private property in Woodside Park, a residential community in Pine, Colorado. Working with Robert Nevadomski, the HOA's then-President, Respondent filed suit against the Magness Defendants, who were responsible for the construction of the road, as well as the Park County Board of County Commissioners ("the County"), which issued a permit for the road's construction. Because the road was slated to extend across property owned by the Barillas, Respondent suggested they also participate in the suit as co-plaintiffs.

Respondent sought declaratory and injunctive relief to enjoin the road construction. She also brought claims against the Magness Defendants including trespass and violations of the HOA's restrictive covenants under CCIOA. Respondent then filed a claim against the County for an unconstitutional taking, later amending her complaint to allege violations of 42 U.S.C. § 1983 for substantive and procedural due process rights violations. In September 1997, Respondent obtained a preliminary injunction against the road construction. The injunction eventually became permanent in July 2007.

### Contingency Fee Agreement with the Barillas

In 2001, a rift developed between Respondent and the HOA, and the HOA terminated her representation. In Respondent's stead the HOA hired Michael Schaefer ("Schaefer"), a lawyer and resident of Woodside Park. However, Respondent continued to represent the Barillas and, in June 2003, entered into a written fee agreement with them.

The fee agreement between Respondent and the Barillas acknowledges the Barillas' payment of an initial $20,000 in attorney's fees, and it provides Respondent will continue her representation on a contingent basis of 20% of the gross amount collected. The agreement, as drafted by Respondent, is unusual in that it defines "gross amount" as "the amount collected before any subtraction of expenses and disbursements and shall include all moneys, *including specially awarded attorney's fees* and costs awarded to the client." (Emphasis added).[3] Alternatively, the fee agreement allows Respondent to recover her costs and the reasonable value of her services at the rate of $125 per hour under the theory of *quantum meruit* if the representation were to terminate prior to trial or settlement.

Over the course of Respondent's representation, the Barillas twice agreed to increase the contingent fee: first to 25%, and then to 33%. The Barillas later rejected Respondent's request to increase the contingent fee amount to 50%. Respondent testified that she eventually came to view the contingency fee agreement she drafted as a "windfall" for the Barillas and tantamount to her "enslavement" for their benefit.

### Respondent's Breach of Contract Suit Against the HOA

While she continued to represent the Barillas, Respondent sought to recover attorney's fees from the HOA for work she performed on its behalf from 1997 through 2001. She attached a lien on future proceeds the HOA might recover as a result of litigation

---

**3.** *See* People's Exhibit 3.

against the Magness Defendants and the County, after which she brought suit against the HOA for breach of contract. Following a three-day trial, the case was dismissed on a motion for directed verdict, which Respondent appealed.

The HOA then pressed to recover its attorney's fees from Respondent. In January 2006, the HOA and Respondent settled by signing a Mutual Release Agreement; the HOA, represented by Nevadomski and Schaefer, consented to dismiss with prejudice its claim for attorney's fees, while Respondent agreed to pay the HOA $6,651.80 and to dismiss her appeal. The Mutual Release Agreement also prohibited Schaefer and Nevadomski from "publicizing" the trial court's decision granting the directed verdict.

### Attorney's Fees Hearing

██ After years of protracted litigation and four appeals, the Colorado Court of Appeals ruled in 2007 that the Magness Defendants' road project violated the Woodside Park restrictive covenants.[4] As a result, the Court of Appeals also ruled that the HOA and the Barillas were entitled to recover damages and attorney's fees as prevailing parties under CCIOA, remanding the case to the trial court for such a determination.

A damages hearing before the trial court was held in January 2008. The Barillas were awarded $71,172 in damages against the Magness Defendants, which, with interest, totaled approximately $175,000. Per her contingency fee agreement with the Barillas, Respondent received one-third of the damages award, or approximately $58,000.

Soon thereafter, the HOA and the Magness Defendants settled the HOA's claim for attorney's fees, and a hearing was set for April 14–16, 2008, to resolve the Barillas' attorney's fees claim. In preparation, the Magness Defendants' counsel Rebecca Alexander ("Alexander") subpoenaed Nevadomski and Schaefer to testify at that hearing. Copies of the subpoenas were provided to Respondent. These subpoenas did not contain information regarding the purpose or subject matter of the testimony that Alexander intended to elicit.

While Respondent concedes no disclosure was made to her concerning the subjects of Nevadomski and Schaefer's testimony, Respondent nevertheless concluded that both men would engage in "character assassination" on the stand.[5] In anticipation, Respondent first filed a motion in limine to exclude the testimony. This motion was denied, so on April 8, 2008, Respondent contacted both Nevadomski and Schaefer regarding their upcoming testimony. Respondent informed Nevadomski that she would sue him should he testify at the attorney's fees hearing and that he had already breached the terms of their Mutual Release Agreement by discussing with Alexander, and thus "publicizing," the HOA's suit against Respondent.[6] Respondent admits, however, that prior to making this call she did not review the language of the Mutual Release Agreement between Respondent and the HOA.

Respondent left a similar message for Schaefer via voicemail:

> Mr. Schaefer, this is Alison Maynard. It's 10:00 on Tuesday. Um you have entered into an agreement with Magness that contemplates your providing testimony apparently against me personally and um this will take place at the attorney fee hearing. So you got your money but you are going to go after the Barillas and me per your agreement with Magness and Magness also found out about the breach of contract case I filed against you and it has all that, so your publicizing this stuff actually is in direct violation of the mutual release agreement that you personally signed with me and so did Robert Nevadomski, he's in violation too, so you have a little bit of a problem going around making contracts

4. The Barillas did not prevail on their section 1983 claims against the County.

5. *See* Respondent's Exhibit I, page 88.

6. *See* People's Exhibit 15. This, despite the fact that Alexander testified she had first learned of the Mutual Release Agreement from Respondent herself in October 2007; Respondent had notified Alexander of the terms of the Mutual Release Agreement to ensure the HOA was not able to recover costs from the Magness Defendants to which it was not entitled.

with people and breaking them and making new contracts to do exactly the opposite of what you told me you were going to do. So you have a little problem and you better not testify or I will sue you for damages ... keep that in mind.[7]

The Hearing Board concludes that Respondent acted precipitously and without knowledge of the proposed testimony of these witnesses when she threatened them. While Respondent assumed these witnesses would attack her character if called to testify, there is no evidence in the record to suggest that either Schaefer or Nevadomski were prepared to engage in the "character assassination" Respondent apparently feared. Accordingly, Respondent's assertion—that if these witnesses had testified they would have violated the Mutual Release Agreement by publicizing its contents—is baseless.

Further, Respondent was well aware of the evidentiary and procedural rules available to address her concerns regarding Schaefer and Nevadomski's testimony. Indeed, Respondent filed a motion in limine to preclude them from testifying. When the trial judge denied her motion, however, Respondent threatened to sue these witnesses to keep them silent on matters relevant to the attorney's fees hearing.

The clear and convincing evidence is that Schaefer and Nevadomski were subpoenaed to testify on matters relevant to the attorney's fees issue, and that Respondent's threats to these witnesses were intentionally made for the sole purpose [8] of dissuading them from presenting relevant testimony that could affect her fee award. Respondent's communications had the intended chilling effect: both men stated they believed Respondent would sue them had they testified, and both expressed an unwillingness to testify precisely *because* neither wished to face the prospect of a retaliatory suit filed by Respondent.

That Respondent did not threaten criminal, administrative or disciplinary charges, as proscribed by Colo. RPC 4.5, is of no consequence in our analysis. While Colo. RPC 4.5, which prohibits threats of prosecution to gain advantage in a civil matter, is not applicable here, Respondent's threats of civil suit in order to deter witnesses from testifying is no less detrimental to the integrity of our legal system. Indeed, threatening to sue a witness simply because that witness may offer relevant testimony is inimical to our system of justice. As such, Respondent's threats to Schaefer and Nevadomski constitute conduct prejudicial to the administration of justice in violation of Colo. RPC 8.4(d).[9]

### Barillas–Magness Settlement

■ The same day Respondent placed calls to Nevadomski and Schaefer—on April 8, 2008—Respondent was granted leave to withdraw from her representation of the Barillas for personal reasons.[10] The Barillas were concerned about the expense of hiring new counsel for the sole purpose of litigating their attorney's fees claim, but they ultimately chose to hire Nick Swartzendruber ("Swartzendruber") for this purpose. They did so, in part, to ensure Respondent would be fully compensated for her efforts on their behalf, and in part because they understood that Respondent agreed Swartzendruber's fees would "come off of the top" of any recovery, with the remaining funds to be divided between them and Respondent, as outlined in their contingency fee agreement.

7. *See* People's Exhibit 18.

8. The Hearing Board concludes Respondent did not make these threats because she wished to avoid "publicizing" to the Magness Defendants the contents of the Mutual Release Agreement; had Respondent feared the Magness Defendants would learn of the Mutual Release Agreement, she certainly would not have discussed its terms with the Magness Defendants' counsel in October 2007. *See* n. 6, *supra*.

9. *Compare* C.R.S. § 18-8-707 (providing that even without threats, a person commits tampering with a witness if he intentionally attempts to induce a witness who may be called to testify in any official proceeding to (a) testify falsely or unlawfully withhold any testimony, (b) absent himself from any official proceeding to which he has been legally summoned or (c) avoid legal process summoning him to testify).

10. Because counsel for the Magness Defendants had objected to Respondent's request to withdraw as counsel, the Barillas honored Respondent's request that they terminate their attorney-client relationship with her.

To protect her interests, Respondent also filed a notice of attorney's lien asserting a claim over one-third of the Barillas' attorney's fees recovery.

Due to Respondent's withdrawal, the Barillas' attorney's fees hearing was rescheduled until the summer of 2008. Before the scheduled hearing, however, the Barillas signed a settlement agreement with the Magness Defendants whereby the Magness Defendants would pay the Barillas $275,000 for damages, fees, costs and interest, $91,666.67 of which was due to Respondent per the contingency fee agreement and her attorney's lien. The agreement between the parties notes that while Respondent had declined the opportunity to be a party to the settlement, "it is the parties [sic] intent that **all matters** relating to the Litigation be fully and finally resolved" by the agreement.[11] The Barillas and the Magness Defendants filed a motion seeking the trial court's approval of the settlement and served Respondent with that motion.

Initially, Respondent objected to the settlement, filing a "Motion to Intervene, And for Leave to Do Expedited Discovery." But on June 24, 2008, during a telephonic conference in which the trial court judge questioned her, Respondent announced she would not object to the agreement, notwithstanding her belief that the settlement amount was about $200,000 less than what was due.[12] And on June 26, 2008, Swartzendruber filed on Respondent's behalf her "Withdrawal of Objection to Settlement."[13] That same day, the trial court issued its order approving the settlement agreement, noting the attorney's fees were "fair and reasonable," and suggesting Respondent's recourse for additional

compensation lay in pursuing a *quantum meruit* claim against the Barillas.[14]

Just four days later, however, Respondent reconsidered her withdrawal, which she now characterizes as an "impulsive act" made in a "weak" moment, and filed an objection to the trial court's order, requesting it vacate its "additional findings."[15] On July 12, 2008, Respondent also filed a motion for post-trial relief, seeking a trial on her fee claim and attaching an updated affidavit regarding her fees. The trial court denied both motions.

Soon thereafter, Respondent filed a notice of appeal with the Colorado Court of Appeals seeking redress for her compensation claims; the Court of Appeals concluded Respondent lacked standing to appeal the trial court's order approving the settlement agreement.[16] Respondent's petition for certiorari challenging the Court of Appeals' decision is now pending before the Colorado Supreme Court.

The Hearing Board finds and concludes Respondent's clients had grown weary of litigation by the time the case was remanded to determine damages and attorney's fees. By that time, Respondent and the Magness Defendants had been engaged in litigation in this case for over ten years, and all parties, not least the Barillas, were anxious to conclude the case and resolve the pending matters, including payment to Respondent of her share of the attorney's fees. In fact, the parties sought judicial approval of the global settlement to preclude further litigation with Respondent. Understanding Respondent to have withdrawn any objection to the settlement, the Barillas and the Magness Defendants finalized their agreement.

When Respondent changed her mind and challenged the settlement, she placed the

---

11. *See* People's Exhibit 26, page 1649. Although there is some ambiguity whether Respondent was invited to participate in crafting the substance of the settlement agreement, the Hearing Board finds it is clear the parties did, in fact, request Respondent to participate as signatory to that document.

12. *See* People's Exhibit 28, page MAY3173–35. At the hearing, Respondent also agreed she was on the "same page" with the trial court when Judge Barton noted, "So what the court—the way the court considers your position, Ms. Maynard, is as to whether or not the settlement is reasonable, and not that you are asserting some

interest to say the court has to reject [the settlement] because you're not consenting to it." *Id.* at MAY3173–71.

13. *See* People's Exhibit 29.

14. *See* People's Exhibit 30.

15. *See* People's Exhibit 33. Respondent perceived these additional findings to be based on bias.

16. *See* People's Exhibit 37.

Barillas and the Magness Defendants in a tenuous position. They were then faced with the likelihood that Respondent would continue to litigate the reasonableness of the attorney's fees award, despite their collective desire to bring the case to a close. Nevertheless, the Hearing Board cannot find that Respondent violated Colo. RPC 8.4(d) by challenging the settlement, intervening or appealing the court's denial of her motion to intervene.

While the Hearing Board questions Respondent's legal argument that she has an independent claim for attorney's fees, Respondent's motions and appeals do not constitute a violation of Colo. RPC 8.4(d). In so finding, the Hearing Board is cognizant of the comment to Colo. RPC 3.1, which notes a legal action cannot be considered frivolous if a lawyer is able to support that action by a good faith argument for an extension, modification or reversal of existing law in light of the law's ambiguities and potential for change. Here, Respondent sought recourse for an arguably colorable claim[17] through traditional legal channels, and there is no evidence in the record indicating the trial court or the Court of Appeals considered sanctions for her efforts to do so. As such, the Hearing Board finds the People failed to prove by clear and convincing evidence that Respondent's conduct in challenging the settlement was prejudicial to the administration of justice.

## Respondent's Efforts to Obtain Additional Compensation

■ Under the Barillas' fee settlement with the Magness Defendants, Respondent received and negotiated a check for $91,666.67.[18] Respondent contends that once the Barillas settled their fee claims, her contractual relationship with them ended, and she was free to pursue her own independent claims under CCIOA for additional fees from the Magness Defendants.

As such, Respondent does not dispute that, following the trial court's approval of the global settlement, she sent an email to the Magness Defendants' counsel, Alexander, volunteering to release her own compensation claims for an additional $50,000. Respondent conditioned her offer on "confidentiality even broader than the rule provides for" and specifically precluded disclosure of "any communication about it to the Barillas or anyone from [the HOA]."[19] Alexander rejected the offer as unethical, to which Respondent replied by email, "Do not lecture me about ethics, Ms. Alexander. Fine: Gary [Magness] will spend $50,000 defending the appeal!"

Respondent argues she was appropriately pursuing fees in an appropriate manner. At the hearing, Respondent went so far as to assert she had "no duty to spare another party [the Barillas] in litigation," and that "it is immaterial how [the Barillas] felt." We disagree, and we deem Respondent's conduct inconsistent with this State's system of professional ethics.[20] While Respondent may

---

**17.** The Hearing Board need not decide here whether Respondent possesses an independent legal claim, apart from that of the Barillas, to seek additional attorney's fees under CCIOA, since this is an issue that is presently before the Colorado Supreme Court on petition for certiorari. The Hearing Board notes that the weight of authority under similar statutes appears to militate against an attorney's right to seek fees independent of his or her client. *See, e.g., Mail–Well Envelope Co. v. Regional Transp. Dist.,* 150 F.3d 1227 (10th Cir.1998); *United States ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip.,* 89 F.3d 574 (9th Cir.1996); *Freeman v. B & B Assocs.,* 790 F.2d 145 (D.C.Cir.1986); *Anderson v. American Int'l Mortgage Bankers, Inc.,* 362 B.R. 575 (Bankr.E.D.N.Y.2007); *Paradis v. Brady,* 2007 WL 925285 (D.Idaho, March 27, 2007); *Medicorp v. Avis Corp.,* 122 Misc.2d 813, 473 N.Y.S.2d 908 (N.Y.Sup.1984). However, Respondent can marshal some legal authority to support her position, including a Colorado Supreme Court case. *See, e.g., James v. Home Construction Co. of Mobile, Inc.,* 689 F.2d 1357 (11th Cir.1982); *Citizens Legal Envtl. Action Network, Inc. v. Premium Standard Farms, Inc.,* 2003 WL 22110493 (W.D.Mo. Sept. 10, 2003), *aff'd sub nom. Citizens Legal Envtl. Action Network, Inc. v. Premium Standard Farms, Inc.,* 397 F.3d 592 (8th Cir. 2004); *Pacheco v. Pacheco,* 156 Colo. 356, 398 P.2d 978 (1965).

**18.** *See* People's Exhibit 32.

**19.** *See* People's Exhibit 36.

**20.** In so finding, the Hearing Board takes into account Colo. RPC 1.16(d), which guides our interpretation of an attorney's duties to protect a client's interest upon termination of the representation.

possess a colorable claim for additional fees, her methods of attempted collection here were deceptive. Respondent's insistence on complete confidentiality demonstrates to us that Respondent wished to hide any additional recovery, thereby intentionally depriving the Barillas of any notice regarding receipt of fees to which they might lay claim. Indeed, if Respondent truly believed she had an independent claim to additional attorney's fees under CCIOA, there would have been no reason to condition a settlement with the Magness Defendants on strict confidentiality from the Barillas.

The Hearing Board considers Respondent's conduct deceitful and woefully lacking in personal integrity. A lawyer's integrity is the cornerstone of the public's trust in the legal profession.[21] We find Respondent violated that trust here. Even though the Barillas were no longer her clients, Respondent still had an obligation as a lawyer to act openly and honestly when making overtures to obtain additional attorney's fees. That Respondent attempted to enlist the Magness Defendants in her scheme to hide receipt of additional funds makes her behavior even more egregious in our view.

Therefore, the Hearing Board finds and concludes Respondent's attempt to secretly negotiate with the Magness Defendants for additional attorney's fees, while expressly seeking to avoid disclosure of those arrangements to the Barillas, constitutes intentional conduct involving deceit in violation of Colo. RPC 8.4(c). We emphasize that we do not base our findings on a theory of breach of contract,[22] but rather on the fundamental principal that lawyers must approach all interactions with fair dealing, honesty and integrity. Here, because Respondent specifically attempted to conceal any additional recovery from the Barillas, who had a right to know of any such arrangements, her conduct "lies well beyond the bounds, rather than merely at the less-clearly defined fringes, of acceptable behavior."[23]

As a final matter, based upon her manner and demeanor on the witness stand and the unreasonableness of her testimony, the Hearing Board finds that Respondent is not a credible witness. We specifically conclude Respondent's explanation that she finds herself in these proceedings solely because powerful people want to take away her license to practice law entirely without merit.

## V. SANCTIONS

The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct. Pursuant to ABA *Standard* 3.0, in imposing a sanction after a finding of misconduct, the Hearing Board must consider the duty breached, the mental state of the lawyer, the injury or potential injury caused and the aggravating and mitigating evidence. Ultimately, the appropriate sanction turns on the facts and circumstances of each case.

### ABA Standard 3.0—Duty, Mental State and Injury

The Hearing Board finds Respondent violated her duties to the general public and to the legal system. Members of the legal profession must maintain the standards of personal integrity upon which the community relies and abide by the rules of procedure that affect the administration of justice. Here, Respondent made secret overtures to obtain and keep additional attorney's fees without alerting her former clients, and she threatened to sue subpoenaed witnesses if they provided testimony at a hearing on a relevant matter. Such conduct patently vio-

---

21. "Purposeful deception by an attorney licensed in our state is intolerable, even when it is undertaken as a part of attempting to secure the surrender of a murder suspect." *In re Pautler*, 47 P.3d 1175, 1176 (Colo.2002).

22. Nor do we find here that confidential settlement agreements are *per se* improper. We sim-

ply find that Respondent's efforts to prevent discovery of such an agreement by the Barillas, who may have had a valid claim to a portion of Respondent's recovery, was improper.

23. *See In re Haines*, 177 P.3d 1239, 1256 (Colo. 2008) (Coats, J., dissenting).

lates Respondent's responsibility as an officer of the court.

Lawyers have a right to be compensated for their services, so an attempt to obtain compensation within the bounds of rules and procedure is not a violation of an attorney's duties to the court. Respondent's actions, however, are well beyond any reasonable attempt to seek compensation for her services. Respondent did not engage in conduct within the rules of procedure. Instead, she sought to engage in a "no holds barred" approach to securing additional fees.

The Hearing Board also finds Respondent acted intentionally when she threatened Schaefer and Nevadomski. She likewise acted intentionally when she attempted to obtain $50,000 from the Magness Defendants on the condition the arrangement be kept confidential from the Barillas, her former clients, who were entitled to assert their rights to share in those proceeds.

Finally, the Hearing Board concludes Respondent caused serious potential harm to the Barillas. She did so by secretly attempting to obtain additional funds from the Magness Defendants in order to avoid alerting the Barillas to any attorney's fees recovered, thereby depriving them of their right to assert a contractual claim to those funds. Respondent also caused potential harm to the judicial process by threatening Schaefer and Nevadomski with suit if they testified at the attorney's fees hearing. Respondent's threats could have resulted in an adverse effect on that hearing if those witnesses had been sufficiently intimidated by those threats such that they refused to testify.

### ABA Standard 3.0—Aggravating Factors

Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. The Hearing Board considers evidence of the following aggravating circumstances in deciding the appropriate sanction.

*Prior Disciplinary Offenses—9.22(a)*

The record before us shows Respondent has been disciplined once before for an act involving misrepresentation, deceit and lack of respect for the court and its processes, the same issues we address here.

*Dishonest or Selfish Motive—9.22(b)*

The record here amply demonstrates that Respondent was intent on obtaining what she thought were attorney's fees she had earned. Hers was a purely mercenary and selfish motive in secretly going after additional funds. Furthermore, we find Respondent's surreptitious efforts to obtain additional funds from the Magness Defendants dishonest because her demand was intended to circumvent notification to the Barillas of any fees she obtained. Likewise, her threats to Schaefer and Nevadomski evidence a willingness to misuse the legal process to achieve her desired ends.

*Pattern of Misconduct—9.22(c)*

In reviewing the record before us, the Hearing Board finds Respondent has engaged in a disturbing pattern of misconduct. Because she feared she might not obtain adequate compensation for her services at the Barillas' fees hearing, she went outside the judicial process to procure a remedy by threatening witnesses she believed might offer damaging testimony about her, as described in our Findings. Likewise, when Respondent failed to obtain what she considered to be sufficient remuneration for her services in the global settlement, she secretly attempted to secure additional fees without notifying the Barillas. Respondent's pattern of taking matters into her own hands when recourse is not available to her through traditional legal avenues is extremely harmful to the administration of justice and causes the Hearing Board to have grave concerns for the protection of the public.

*Multiple Offenses—9.22(d)*

We find two offenses: violations of RPC 8.4(c) and (d). We do not find these offenses to overlap factually. Therefore, we consider them in aggregation.

*Bad Faith Obstruction of the Disciplinary Proceedings by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Agency—9.22(e)*

The PDJ ordered Respondent to provide certain disclosures to the People. Respon-

dent admits that after making these documents available, she engaged in what she described as "self help" by removing the documents from the PDJ offices, contrary to the PDJ's order. This conduct is disturbingly reminiscent of the "self help" she engaged in by threatening witnesses in the instant case. The Hearing Board also notes Respondent refused to comply with the PDJ's order to exchange pre-hearing materials with the People. Respondent's failure to comply with the PDJ's order resulted in her lack of preparation, caused delays and distracted the Hearing Board from the issues before it.

*Refusal to Acknowledge Wrongful Nature of Conduct—9.22(g)*

Respondent insists she did nothing unethical. She claims she had no obligation to disclose to her former clients her attempts to secure additional attorney's fees. Further, she continues to maintain there is no rule violation for threatening a civil suit to gain a civil advantage. We find Respondent's failure to acknowledge her misconduct part of the larger problem in this case: Respondent refuses to abide by the rules of professional conduct when they do not suit her.

*Substantial Experience in the Practice of Law—9.22(i)*

Respondent has practiced law for over twenty years in Colorado. Accordingly, her conduct was not the product of inexperience or mistake.

### ABA Standard 3.0—Mitigating Factors

Mitigating factors are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. The Hearing Board considered evidence of the following mitigating circumstances in deciding the appropriate sanction.

**24.** ABA *Standard* 5.12 states suspension is generally appropriate when a lawyer knowingly engages in criminal conduct that does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice. This case does not involve criminal conduct, and therefore we find this Standard inapplicable.

*Personal or Emotional Problems—9.32(c)*

Respondent's conduct leading to these disciplinary proceedings occurred after her license had been suspended. Respondent testified that those earlier disciplinary proceedings caused her extreme emotional and financial stress during the spring of 2008, which may have led to Respondent's self-described "level of excitability" in her attempts to obtain additional fees.

### Analysis Under ABA Standards and Case Law

*Violation of Rule 8.4(c)—Efforts to Secretly Obtain Attorney's Fees*

ABA *Standard* 5.11(b) provides for disbarment when "a lawyer engages in *any ... intentional conduct* involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice." (Emphasis added). In comparison, ABA *Standard* 5.13 provides that reprimand is generally appropriate "when a lawyer *knowingly* engages in ... conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law." (Emphasis added).[24]

The Hearing Board finds ABA *Standard* 5.11(b) the appropriate starting point in our analysis because Respondent *intentionally* made secret overtures to the Magness Defendants for additional attorney's fees in order to avoid disclosure to the Barillas of those arrangements.[25] Nevertheless, the Hearing Board cannot conclude, in light of applicable case law, that disbarment is the appropriate sanction in this instance. Here, Respondent's conduct, while serious, does not strike the Hearing Board as more egregious than that described in comparable cases ordering suspension.[26]

**25.** We do not employ ABA *Standard* 4.6, as suggested by the ABA *Standards,* because the Barillas were not clients of Respondent at the time of the conduct discussed here.

**26.** *See People v. Kearns,* 843 P.2d 1 (Colo.1992) (upholding suspension for one year and one day where attorney made misrepresentations to obtain a loan and then assigned a promissory note secured with loan's proceeds without lender's

However, the Hearing Board cannot ultimately find reprimand, as provided in ABA *Standard* 5.13, the most suitable sanction for Respondent's conduct. We view Respondent's effort to deceive the Barillas by brokering a secret settlement of additional attorney's fees, which she planned to keep for herself, an *intentionally* deceitful act that adversely reflects on her fitness to practice law. We are also influenced by the aggravating factors discussed above, most particularly Respondent's prior disciplinary offense for deceitful conduct, as well as her repeated disregard of the PDJ's orders, which we consider to constitute bad faith obstruction of this disciplinary proceeding. Respondent's intentionally deceitful behavior, coupled with these aggravating factors, evince a lack of personal integrity such that the Hearing Board concludes a substantial suspension for this violation is appropriate.

*Violation of Rule 8.4(d)—Threats to Witnesses*

ABA *Standard* 6.12 calls for suspension in cases involving knowing conduct that is prejudicial to the administration of justice, resulting in potentially adverse effects on the legal proceeding. Although ABA *Standard* 6.12 addresses instances in which a lawyer knows false statements are made to the court or material information is withheld, the Hearing Board concludes this standard is most applicable to the case at issue, where Respondent's knowing threats caused a chilling effect on the witnesses' willingness to testify and could have resulted in an adverse effect on the attorney's fees hearing.

Respondent's threats, which could have derailed the attorney's fees hearing had it gone forward, constitutes conduct prejudicial to the administration of justice warranting a short suspension under relevant case law. In *People v. Sigley*, 951 P.2d 481, 482 (Colo. 1998), the Colorado Supreme Court held that a threat of a criminal prosecution to obtain an advantage in a civil matter, in violation of Colo. RPC 8.4(d), merited at least a short suspension.[27] Following this precedent, the Hearing Board concludes a short suspension is appropriate with respect to this violation.

*Independent Medical Examination*

Respondent's defense centers on what she deems a conspiracy: she argues she was made to appear before this Hearing Board because a loose network of her opponents colluded to remove her from the practice of law. When asked about the identity of these opponents, Respondent listed the Office of Attorney Regulation Counsel, the courts, and others who have no logical connection to this case. So ingrained and illogical are Respondent's views on this subject that the Hearing Board has grave concerns regarding Respondent's state of mind. We believe these factors should be taken into consideration in assessing sanctions. Specifically, the Hearing Board concludes Respondent's reinstatement must be contingent on submission to an independent medical examination by a qualified psychiatrist.

## VI. CONCLUSION

Respondent violated her duty to the public by secretly seeking to obtain additional attorney's fees without the Barillas' knowledge. Respondent also violated her duty to the legal profession by threatening witnesses

knowledge). *See also In re Disciplinary Action Against Overboe*, 745 N.W.2d 852 (Minn.2008) (ruling suspension for minimum one year appropriate where attorney deceptively labeled a personal account as a trust account to shield funds from judgment creditors and commingled client and personal funds). *Cf. In re C de Baca*, 11 P.3d 426 (Colo.2000) (finding disbarment fitting where attorney attempted to deprive his client's ex-wife of her one-half undivided interest in property, but only because attorney had been sanctioned in nine previous cases).

27. *See also In re Whitney*, 820 N.E.2d 143 (Ind. 2005) (six month suspension appropriate for nu-

merous violations, including violation of Rule 8.4(d) for lawyer's threats to file defamation suit if client filed a grievance). The Hearing Board concludes public censure or reprimand, as has been ordered in other cases in sister jurisdictions, *see, e.g., In re Pyle, III*, 278 Kan. 230, 91 P.3d 1222 (2004) (threats of lodging disciplinary grievance to gain advantage in civil suit called for public censure); *In re Disciplinary Action Against Coleman*, 463 N.W.2d 718 (Minn.1990) (lawyer's threats to bring meritless litigation against opponents unless they signed stipulation warranted public reprimand), is not suitable in this case.

with civil suit if they testified in her attorney's fees hearing. The Hearing Board is mindful that Respondent has engaged in serious misconduct in the past and was given an opportunity to correct her behavior. Instead of heeding the last Hearing Board's admonitions, Respondent engaged in the conduct we address here. Accordingly, we conclude that Respondent's cumulative misconduct warrants a suspension of one year and one day.

## VII. *ORDER*

The Hearing Board therefore **ORDERS:**

1. Alison Maynard, Attorney Registration No. 16561, is **SUSPENDED** from the practice of law for a period of **ONE YEAR AND ONE DAY.** The suspension **SHALL** become effective thirty-one days from the date of this order upon the issuance of an "Order and Notice of Suspension" by the PDJ and in the absence of a stay pending appeal pursuant to C.R.C.P. 251.27(h).

2. Respondent, as a condition precedent to any petition for reinstatement pursuant to C.R.C.P. 251.29(c), **SHALL** submit to an Independent Medical Examination ("IME") by a qualified psychiatrist agreeable to the People. Respondent, not the People, shall be responsible for the cost of the IME. Once a qualified psychiatrist is chosen, it is Respondent's duty to advise the PDJ so that an appropriate order may be drafted and presented to the psychiatrist as to what issues to address in a report to the PDJ. The doctor shall have access to all records in the People's possession, as well as this opinion, before meeting with Respondent for the scheduled IME.

3. Respondent **SHALL** pay the costs of these proceedings. The People shall submit a Statement of Costs within fifteen (15) days from the date of this order. Respondent shall have ten (10) days thereafter to submit a response.